Cooke, J.
Marriage being a status with which the State is deeply concerned, separation agreements subjected to attack are tested carefully. "A court of equity does not limit its inquiry to the ascertainment of the fact whether what had taken place would, as between other persons, have constituted a contract, and give relief, as a matter of course, if a formal contract be established, but it further inquires whether the contract [between husband and wife] was just and fair, and equitably ought to be enforced, and administers relief where both the contract and the circumstances require it” (Hen *66 dricks v Isaacs, 117 NY 411, 417; Hungerford v Hungerford, 161 NY 550, 553).
We review here the grant by the Appellate Division of a divorce to one spouse, because of a living separate and apart by the marital parties pursuant to a separation agreement as provided by statute (Domestic Relations Law, § 170, subd [6]), and, more particularly, the declaration that a portion of the agreement, which stipulated that there be an equal division of certain securities, was null and void.
Henrietta Christian and William Christian were married in 1958. Five years later a daughter was born and, about two years thereafter, a son. The husband, the holder of a degree in mechanical engineering, was the vice-president in charge of manufacturing for a metal fabricating concern. The wife in time had acquired a master’s degree in social work and held a position at a school for girls. Unfortunately, differences arose and, following a bit of marriage counseling, they entered into a separation agreement on January 15, 1972. At that time, the husband’s employment earnings were $40,000 a year and the wife’s $10,000. In addition, both also had separate unearned income.
The agreement contained a section numbered "6”, entitled "Division of Property”. In it, provisions were made with reference to such items as the family residence, automobiles, household furnishings, hospital, medical and dental care policies and life insurance. The section concluded with the paragraph: "During the period of the separation assets held in individual name shall continue to be so held and all joint assets shall continue to be held jointly. In the event that the parties are divorced all assets held by the parties in their joint and individual names on January 1, 1972, a list of which properties is appended hereto as Schedule A, shall be divided equally between the parties so that the Husband shall take one-half of all assets held by the Wife in her individual name on January 1, 1972 and she shall take one-half of all assets held by the Husband on that date. It is the intent of the parties that so far as economic circumstances of the parties permit the money which each receives from the other shall be preserved and left by Will to the two children, Christine and Keith.” No mention was made of support of the wife, but the husband covenanted to pay $100 a week for the children.
This action was commenced in August of 1972 by the plaintiff wife for divorce on the ground of cruel and inhuman *67 treatment, pursuant to subdivision (1) of section 170 of the Domestic Relations Law. The defendant, in the following January, served an amended answer containing a counterclaim for divorce predicated on the living separate and apart by the parties since the execution of the separation agreement, a period in excess of one year, and the due performance by defendant of all of the agreement’s terms and conditions. The answer also prayed that the separation agreement be incorporated but not merged in the judgment and for such other relief as would be just. For her reply, plaintiff denied the essential allegations of the counterclaim and asserted affirmative defenses to the effect that the agreement was procured as a result of fraud, misrepresentations and concealment, was the product of coercion and duress, was made without consideration and violated public policy.
During a nonjury trial, plaintiff’s complaint was dismissed for failure to make out a prima facie case. Following full submission of proof, Supreme Court declared the separation agreement null and void for fraud, set it aside in its entirety, dismissed the husband’s counterclaim, and ordered the parties to co-operate to effect a reconciliation and resumption of the marital relationship. The last paragraph of section "6” of the agreement was examined. Noting that the husband was aware that his stocks listed in the schedule were worth’$200,000 while those of the wife had a value of $800,000 to $900,000, that the wife contended that she had no idea of the relative values of the securities, that the husband cleverly maneuvered the retention of the attorney who ostensibly represented the wife and drew the agreement, that neither party informed the attorney of the values of the stock being split, it was concluded that the husband’s conduct in procuring the drafting of the agreement and in concealing from the attorney the details of the distribution of assets constituted such fraud as to vitiate the agreement completely.
The Appellate Division unanimously reversed, on the law and the facts, granted defendant husband’s counterclaim for divorce and declared the last paragraph of provision "6” of the parties’ agreement null and void. It was held that the record did not support Supreme Court’s findings of fact to the effect that defendant was guilty of fraud or overreaching with regard to the formulation or signing of the agreement, that plaintiff failed to sustain her burden of proof as to her affirmative defense of fraud in the inducement. Insofar as the *68 parties had lived separate and apart pursuant to the agreement, properly executed and filed, and adhered to its terms for more than a year, thus fulfilling the statutory requirements, defendant was held to be entitled to a decree of divorce. In the Appellate Division’s view, the wife was not represented by an attorney acting solely in her interests and her knowledge of financial matters was not equal to that of her husband. In the light of these facts, the relative value of the listed securities to be divided and the high price plaintiff apparently was prevailed upon to pay for her husband’s signature to the separation agreement, the last paragraph of provision "6” was held to be so unconscionable as to be unenforceable.
With the enactment of the Divorce Reform Law of 1966 (L 1966, ch 254), New York abandoned its position as the only State in the union which regarded adultery as the sole ground for absolute divorce. Under a new section 170 of the Domestic Relations Law, an action for divorce may be maintained on any one of six grounds, including adultery, the scope of which was extended by definition (subd [4]). Cruel and inhuman treatment, abandonment and imprisonment were joined as bases for the action (subds [1], [2], [3]). Finally, under the last two subdivisions, two new grounds for absolute divorce were specified—living apart pursuant to a separation decree or judgment and living separate and apart pursuant to a written separation agreement (subds [5], [6]).
These last two bases have become known as the "no fault” grounds, since they were designed to make separation a ground for divorce, regardless of fault, as long as the authenticity of the separation is supported by a separation decree or agreement (see Foster & Freed, Matrimonial Law [rev ed, 1973], p 29).[1] "The decree [or agreement] is simply intended as evidence of the authenticity and reality of the separation” (Gleason v Gleason, 26 NY2d 28, 35). This requirement as to a separation decree or agreement is peculiar to New York and reflects legislative concern over the fraud and collusion which historically infected divorce actions involving adultery. At the 1966 legislative session, the original broad proposal for a "living separate and apart” ground, as incorporated in the Wilson-Sutton Bill, at first rejected in the so-called "Leader’s *69 Bill”, was finally incorporated in the compromise bill, conditioned on the requirements that there be a formal and filed written agreement and that the party seeking to come within the embrace of such ground prove that "he or she has duly performed all the terms and conditions of such agreement”[2] (1 Foster & Freed, Law and the Family, pp 264, 333, n 9; p 337; Foster & Freed, The Divorce Law Reform [1970], p 22; see Littlejohns v Littlejohns, 76 Misc 2d 82, 86, affd on opn at Trial Term 42 AD2d 957).
Divorces provided for in subdivisions (5) and (6) are also referred to as "conversion” divorces in that they permit the conversion of a judicial separation decree or separation agreement into an absolute divorce decree. In Gleason, an action under subdivision (5), it was held that "the statute, as a whole, points [to] the construction that all that has to be proved is that there is some kind of formal document of separation * * * that the plaintiff has complied with its terms and that the parties have lived apart” pursuant to the document for the statutory period (p 37).
It was the legislative intent to provide these nonfault grounds for divorce where marriages are dead, based on a recognition that it was morally and socially desirable, to society and to the parties to such a union, to enable them " 'to extricate themselves from a perpetual state of marital limbo’ ” (Gleason v Gleason, 26 NY2d 28, 35, 37, supra). The "vital and operative” fact, in subdivision (6) divorce cases, is the actual living apart of the parties—pursuant to the separation agreement (cf. id., p 37). Put a bit differently, the function of the document is "merely to authenticate the fact of separation” (cf. id., p 37). Once there has been a separation for one or more years (L 1970, ch 835, § 2) supported by the prescribed separation agreement with which there has been substantial compliance, the statute suggests no condition or restriction on the right of either party to commence the action (see Tantleff v Tantleff, 60 Misc 2d 608, 611, affd on limited grounds 33 AD2d 898). A number of decisions, following in the wake of the 1966 reforms, have held that even though individual clauses in a separation agreement were void, the agreement supplied grounds for divorce under subdivision (6) of section 170 of the Domestic Relations Law since such agreements survive for that purpose (see, e.g., Bruno v Bruno, 51 AD2d *70 862, mot for lv to app den 39 NY2d 706; Seligman v Seligman, 78 Misc 2d 632, 635; Hummel v Hummel, 62 Misc 2d 595, 599; but see Markowitz v Markowitz, 77 Misc 2d 586, 589, 592).
The cause of action in defendant’s counterclaim is one for divorce under subdivision (6) of section 170, and the reply thereto asserts affirmative defenses. No cause is set forth by either party for enforcement or invalidation of the separation agreement. As to said counterclaim, it is the physical separation, rather than the writing, which constitutes the actual basis of the cause (Littlejohns v Littlejohns, 76 Misc 2d 82, 86, affd on opn at Trial Term 42 AD2d 957, supra; Hummel v Hummel, 62 Misc 2d 595, 599, supra). The agreement is "simply intended as evidence of the authenticity and reality of the separation” (cf. Gleason v Gleason, supra, p 35; Harris v Harris, 36 AD2d 594; see Martin v Martin, 63 Misc 2d 530, 533). In Littlejohns the agreement was viewed as evidence of the parties’ actual and continued separation (p 86), and, in Markowitz, the instrument was said to be "merely documentary proof of a separation” (p 591). In Martin, a stipulation made in open court, the transcript of which was filed with the County Clerk, was held to carry no less weight than a written agreement, since the purpose of the filing provision in respect to separation agreements is to evidence the fact that the agreement was made before maintenance of the divorce action (but see Nitschke v Nitschke, 66 Misc 2d 435, 436-437; Jacobs v Jacobs, 55 Misc 2d 9).
Although a written separation agreement is a sine qua non to a divorce under subdivision (6), it is evidentiary in nature and admissible under general rules of evidence (see Richardson, Evidence [Prince—10th ed], § 643). By the same token, proof independent of the agreement would also be admissible on the question of whether or not the parties actually lived separate and apart for at least one year. Therefore, if the separation agreement conforms to the statute but is otherwise found to be void and unenforceable insofar as its substantial provisions are concerned, generally it may still be accepted for the sole purpose of evidencing the parties’ agreement to live separate and apart, thus satisfying the statutory requirement in respect to a separation agreement (see Henderson v Henderson, 47 AD2d 801, app dsmd 37 NY2d 782; 11A Zett-Edmonds-Schwartz, NY Civ Prac, Matrimonial Actions, § 21.05, p 21-14; see, also, La Barge v La Barge, 84 Misc 2d 523, 524-525; but see Cicerale v Cicerale, 85 Misc 2d 1071, 1075). In this *71 same vein, it was held, long before 1966, in Reischneld v Reischneld (100 Misc 561), an action for separation based on abandonment and other grounds, that, even though void, a separation agreement negated an abandonment since the husband and wife separated voluntarily (see Matter of Brown, 153 Misc 282, 284; 16 NY Jur, Domestic Relations, § 886; see, also, Rosenbaum v Rosenbaum, 56 Misc 2d 221, 224). Since, as the Appellate Division here stated, "[t]he parties have lived separate and apart from each other pursuant to their agreement, which was properly executed and filed, and each has adhered to the terms thereof for a period of more than one year”, the requirements of subdivision (6) were fulfilled and that court properly granted a divorce on the counterclaim.
Said court was of the view, however, that the portion of the agreement which called for an equal division of the assets listed in the annexed schedule was "so unconscionable as to be unenforceable” and that the wife should not be required to pay such substantial sums to her husband "upon the advent of such divorce in compliance with a portion of the separation agreement which is tainted with unconscionability” citing Riemer v Riemer (48 Misc 2d 873, affd 25 AD2d 956, mot for lv to app dsmd 17 NY2d 915). In Riemer the word "unconscionable” does not appear, but, over the years, an unconscionable bargain has been regarded as one " 'such as no [person] in his [or her] senses and not under delusion would make on the one hand, and as no honest and fair [person] would accept on the other’ ” (Hume v United States, 132 US 406, 411), the inequality being " 'so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense’ ” (Mandel v Liebman, 303 NY 88, 94). Unconscionable conduct is something of which equity takes cognizance, when warranted (see Weirfield Holding Corp. v Pless & Seeman, 257 NY 536; Graf v Hope Bldg. Corp., 254 NY 1, 4; Howard v Howard, 122 Vt 27; 27 Am Jur 2d, Equity, § 24, pp 549-550; cf. 2 Pomeroy’s Equity Jurisprudence [4th ed], § 873, p 1804).
Generally, separation agreements which are regular on their face are binding on the parties, unless and until they are put aside (2 Foster & Freed, Law and the Family, p 476; see, also, Schmelzel v Schmelzel, 287 NY 21, 26; 2 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], § 36, subd 1, p 36-3). Judicial review is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences in connection *72 with the negotiation of property settlement provisions. Furthermore, when there has been full disclosure between the parties, not only of all relevant facts but also of their contextual significance, and there has been an absence of inequitable conduct or other infirmity which might vitiate the execution of the agreement, courts should not intrude so as to redesign the bargain arrived at by the parties on the ground that judicial wisdom in retrospect would view one or more of the specific provisions as improvident or one-sided.
If voidable, such an agreement may be set aside under principles of equity in an action in which such relief is sought in a cause of action or by way of affirmative defense (Susquehanna S. S. Co. v Andersen & Co., 239 NY 285, 292-294; 16 NY Jur, Domestic Relations, § 715). Agreements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith (Ducas v Guggenheimer, 90 Misc 191, 194-195, affd sub nom. Ducas v Ducas, 173 App Div 884). There is a strict surveillance of all transactions between married persons, especially separation agreements (Hendricks v Isaacs, 117 NY 411, 417, supra; Benesch v Benesch, 106 Misc 395, 402; 2 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], § 37, subd 4, p 37-9). Equity is so zealous in this respect that a separation agreement may be set aside on grounds that would be insufficient to vitiate an ordinary contract (Hungerford v Hungerford, 161 NY 550, 553, supra; Cain v Cain, 188 App Div 780, 782; Crowell v Crowell, 135 Misc 530, 532, affd 229 App Div 771). These principles in mind, courts have thrown their cloak of protection about separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity. (Scheinberg v Scheinberg, 249 NY 277, 282-283; Hungerford v Hungerford, 161 NY 550, 553, supra; Matter of Smith, 243 App Div 348, 353; Ducas v Guggenheimer, 90 Misc 191, 194, affd sub nom. Ducas v Ducas, 173 App Div 884, supra; Montgomery v Montgomery, 170 NYS 867, affd 187 App Div 882; see Validity of Separation Agreement As Affected by Fraud, Coercion, Unfairness or Mistake, Ann., 5 ALR 823, 827).
To warrant equity’s intervention, no actual fraud need be shown, for relief will be granted if the settlement is manifestly unfair to a spouse because of the other’s overreaching (2 *73 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], § 37, subd 5, p 37-12; cf. Matter of Baruch, 205 Misc 1122, 1124, affd 286 App Div 869; Pegram v Pegram, 310 Ky 86, 89-90). In determining whether a separation agreement is invalid, courts may look at the terms of the agreement to see if there is an inference, or even a negative inference, of overreaching in its execution. If the execution of the agreement, however, be fair, no further inquiry will be made.
Whether a contract is entire or severable generally is a question of intention, to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted (5 Williston, Contracts [3d ed], § 767, p 629). Here the parties had a right to and did, by expressly stipulating that if any provision of the separation agreement be held invalid or unenforceable all other shall nevertheless continue in full force, make the agreement within reasonable limits divisible, and there is little room for construction (New Era Homes Corp. v Forster, 299 NY 303, 306-307; Coppedge v Leiser, 71 Idaho 248, 251-253; see United States v Bethlehem Steel Corp., 315 US 289, 298). Courts were therefore, by contract terms, free to adjudge the validity of the last paragraph of provision "6” of the separation agreement without consequential effect on the remainder of the writing.
This case is of moment. Important it is, because separation agreements have assumed a new and greater legal dimension. Not only may they serve as "evidence of the authenticity and reality of the separation” which is a basis for absolute divorce but, even though a portion of the agreement, such as one dealing with the economics or property of the marital parties, be declared void because of overreaching in bringing about its execution, the separation agreement still retains vitality as an essential ingredient in such an action for dissolution of the marriage. Because of the law’s purpose, to achieve its moral and social goals and to avoid a frustration of those aims, separation agreements must not be permitted to be employed as instruments for the improper exaction in the inducement of execution of unconscionable terms within a frame of inequitable conduct.
The order of the Appellate Division, insofar as appealed from, should be reversed, without costs, and the case remitted to the Supreme Court, Suffolk County, for further proceedings *74 including a hearing and findings as may be appropriate in accordance with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order, insofar as appealed from, reversed, without costs, and the case remitted to Supreme Court, Suffolk County, for further proceedings in accordance with the opinion herein.

. It is pointed out in Zett-Edmonds-Schwartz (vol 11 A, NY Civ Prac, Matrimonial Actions, § 21.01) that all of the grounds for a separation decree, with the exception of imprisonment, are based upon the fault of one spouse or the other.

. Chapter 700 of the Laws of 1968 substituted "substantially” for "duly”.