## (July 18, 1977)

■ LEWIS M. CHEATHAM, Respondent v MARGARET M. CHEATHAM, Appel-

lant.—In an action to recover moneys due pursuant to a stipulation entered into in open court during a divorce action, defendant appeals from a judgment of the Supreme Court, Nassau County, entered December 3, 1976, which, after a nonjury trial, is in favor of plaintiff-respondent in the principal amount of $11,000. Defendant also purports to appeal from the decision of the same court, as amended, upon which the judgment is based. Appeal from the decision, as amended, dismissed. No appeal lies from a decision. Judgment affirmed, upon the well-reasoned opinion of Mr. Justice Young at Special Term. Plaintiff is awarded one bill of costs. Hopkins, J. P., Margett and Shapiro, JJ., concur; Suozzi, J., concurs as to the dismissal of the appeal from the decision, but otherwise dissents and votes to (1) reverse the judgment in favor of plaintiff, (2) dismiss the complaint and (3) grant judgment to defendant on her counterclaim, with the following memorandum: By affirming the judgment in favor of plaintiff-respondent, the majority herein gives sanction to a stipulation of settlement entered into by both parties in a matrimonial action whereby the wife, i.e., the defendant-appellant herein, agreed to pay her husband, i.e., the plaintiff herein, the sum of $125 per week as alimony. In so holding, the majority resolves the specific issue which was left open by this court in a prior appeal involving the parties herein *(Cheatham v Cheatham,* 53 AD2d 600). In that appeal this court granted the wife's motion to resettle or modify the judgment of divorce, into which the afore-noted stipulation of settlement had been incorporated but not merged, by vacating "that part of the judgment of divorce which provided for alimony payments" to the husband on the ground that the "Special Term was without authority to order a wife to pay a husband alimony" *(Cheatham v Cheatham, supra,* p 600; see, also, *Steinberg v Steinberg,* 46 AD2d 684). This court went on to state that "We do not pass upon the validity and enforceability of the stipulation as a contract." I disagree with the majority's determination which now upholds the validity of this stipulation as a contract because, in my view, under the circumstances herein, the agreement was void for either of two reasons: (1) the complete lack of consideration to support the wife's promise to pay alimony to the husband; or (2) the agreement was unconscionable and contrary to public policy in that it, in effect, constituted a contract to "dissolve the marriage" in violation of section 5-311 of the General Obligations Law. A brief summary of the facts is in order. In the original matrimonial action between the parties, the wife sought a divorce from her husband on the ground of cruel and inhuman treatment and made no request for alimony or counsel fees. In his answer the husband counterclaimed for divorce and support and maintenance. In support of the latter application, the husband alleged that he was unable to work, was without funds and was liable to become a public charge. On February 14, 1974, prior to the trial, a settlement was reached. The wife testified in this action that immediately prior to the settlement, she had been in the Trial Judge's chambers where he stated: "We cannot afford to have this man become a public charge * * * Would you agree to pay him $125 a week?" The wife then agreed to the stipulation of settlement, wherein it was provided that she would pay for her husband "as and for his support and maintenance, in the form of alimony, if you will, the sum of $125 per week". In return, the husband agreed to withdraw his counterclaim and permitted the defendant to obtain an uncontested divorce. The record is clear that the wife was never advised as to whether the trial court had the authority to grant alimony. Indeed, it appears that neither the parties nor their attorneys actually explored what the state of the law was on this issue. Accordingly, it was unreasonable for the wife to have

assumed from what the Trial Judge told her in chambers that he did in fact have the power to direct her to pay alimony in order to prevent her husband from becoming a public charge. A judgment was thereafter entered on March 11, 1974 which directed the wife to pay her husband $125 per week "as alimony". The judgment provided that the stipulation "shall survive and not be merged" therein and further provided that the court retained jurisdiction to make "such further decree with respect to alimony * * * as it finds appropriate under the circumstances existing at the time application for that purpose is made to it". On September 20, 1974 the defendant ceased making payments of $125 per week to her former husband after being advised by a friend that her alimony payments to her former husband were illegal. The veracity of that advice was subsequently borne out by the holding of *Steinberg v Steinberg* (46 AD2d 684, *supra*), and bore fruit in the determination of this court in the prior *Cheatham* appeal (53 AD2d 600, *supra*). The husband then instituted suit to recover arrears from September 20, 1974 for breach of the stipulation of settlement entered into on February 14, 1974. The wife interposed two affirmative defenses and a counterclaim. In her first affirmative defense she alleged that the support provision was unenforceable and void as a matter of law and, in her counterclaim, asked for reimbursement of the moneys paid to her husband pursuant to the stipulation. In her second affirmative defense defendant asked for rescission of the stipulation on the ground that the decision of this court in the prior *Cheatham* appeal necessarily forever precluded any future modification of the stipulation, which was contrary to the intent of the parties. My view regarding the invalidity of this stipulation of settlement is buttressed by a careful analysis of the benefits purportedly received by the wife pursuant thereto. The benefits accruing to the wife under the stipulation of settlement were twofold: (1) obtaining her freedom which she was presumably bargaining for, as evidenced by her testimony that she "agreed to do this [pay her husband] because I just wanted to be free, for no other reason. I wanted to get this thing off my back, and if it was going to cost me $125 a week, and if it was legal for me to pay alimony, I was perfectly willing to do it"; and (2) avoiding embarrassing testimony which might be adduced during the development of her husband's counterclaim. In my view, neither of these purported benefits constitute sufficient consideration to support the wife's promise to pay her husband alimony of $125 per week, or $6,500 annually, for as long as she lived or until he remarried and, accordingly, the agreement must be deemed void (see, also, *Christian v Christian,* 42 NY2d 63). With regard to her freedom, the wife would have been entitled to same upon proof of the allegations in her complaint regardless of whether the action was contested or uncontested and without the obligation of paying her husband $125 per week (see Domestic Relations Law, § 236). The mere facilitation of a divorce, by virtue of the withdrawal of the husband's counterclaim, would clearly not constitute adequate consideration. If, on the other hand, the wife could not prove any proper grounds for divorce, then the stipulation of settlement was clearly a mechanism for the procurement of a fraudulent divorce. An approval of the stipulation under these latter circumstances would constitute sanctioning a divorce by contract, which has always been viewed as against the public policy of this State (see General Obligations Law, § 5-311). With respect to the second purported benefit received by the wife under the agreement, i.e., the avoidance of embarrassing and delicate matter which might be made public upon proof of the husband's counterclaim, the fact remains that the husband's allegations were already a matter of record, having been alleged in

the counterclaim. The added benefit of avoiding the embarrassing testimony in an empty courtroom is surely *de minimis.* Moreover, by enforcing her right under section 235 of the Domestic Relations Law to seal the records of the action, it is quite unlikely that any embarrassing information would have come to public light except by virtue of her own discussion or her husband's discussion of the allegations. Finally, it is my view that the husband's agreement to withdraw his counterclaim in return for alimony from the wife virtually smacks of extortion. The Penal Law, in section 155.05 (subd 2, par [e]), provides that a "person obtains property by extortion when he compels or induces another person to deliver such property to himself * * * by means of instilling in him a fear that, if the property is not so delivered, the actor * * * will: * * * (v) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule". By affirming the judgment and upholding the validity of the stipulation, the majority unwittingly sanctions this improper scheme. It must also be noted that by upholding the validity of the stipulation of settlement, the majority has created a situation which was clearly contrary to the intent of the parties. By virtue of this court's determination in the prior appeal between the parties, which vacated the alimony provision in the judgment, the stipulation herein, if enforceable at all, is enforceable as an independent contract without any relationship to the judgment of divorce (see *Rosenfield v Rosenfield,* 309 NY 985; *Vranick v Vranick,* 41 AD2d 663). Under those circumstances, the stipulation fixes the wife's obligation to support her husband in perpetuity regardless of any change in circumstances, a situation clearly not within the intent of the parties when the judgment of divorce was entered (see *Goldman v Goldman,* 282 NY 296; *McMains v McMains,* 15 NY2d 283). I am well aware of those cases which have upheld, on a waiver theory, stipulations between parties in a matrimonial action, whereby the husband agrees to pay the wife alimony despite the fact that thereafter a judgment of divorce is granted to the husband based on the wife's misconduct, in apparent violation of section 236 of the Domestic Relations Law, which prohibits the payment of alimony to a wife guilty of misconduct (see *Vranick v Vranick, supra; Winsman v Winsman,* 46 AD2d 820; *Josephs v Josephs,* 78 Misc 2d 723). However, in my view, these cases are all distinguishable in that they deal with an express statutory obligation, i.e., alimony for the wife, which, but for the misconduct of the wife, the husband would have been legally mandated to pay. Consequently, the courts, in holding the husband to his agreement *(Vranick v Vranick, supra; Winsman v Winsman, supra),* have not sanctioned a violation of public policy as glaring as the one at bar, where alimony for the husband is expressly not provided for in the statute under any circumstances. Accordingly, I dissent and vote to reverse the judgment.