OPINION OF THE COURT
Jeffrey G. Stark, J.
In a case where one spouse, without counsel, surrenders all rights to a jointly owned business and a jointly owned home by signing an agreement drawn up by the other spouse’s attorney, an inference of overreaching arises so that a hearing is necessary to determine whether the agreement should be set aside as unconscionable when made. Although noted commentators have contradictorily argued that the recent amendments to the Domestic Relations Law pertaining to marital agreements have expanded, and contracted, this traditional rule of equity, the court disagrees for the reasons set forth hereafter. Consequently, the motion of plaintiff husband to enforce the terms of an agreement dated December 11, 1982 is set down for hearing.
FACTS
Defendant filed an action for divorce in 1981. On January 11, 1982, the parties entered into a stipulation discontinuing the action, and simultaneously entered into a “stipulation of settlement” based upon their expressed *783 desire to resume their marriage together and to resolve certain property rights between them. The agreement provided, in part, for the disposition of a jointly owned business, L & S Salon, Inc. The parties agreed that either of them could seek to purchase the other’s interest in L & S Salon for $25,000, and if the offer was refused, the parties agreed to sell the business to the highest bidder and divide the proceeds equally. The agreement similarly provided that if the parties separated, either could give notice to the other demanding that the marital home be sold, and upon such sale, the proceeds were also to be equally divided.
The attempted reconciliation was unsuccessful, and in March, 1982, defendant again filed for a divorce. On December 11,1982, for reasons not explained, plaintiff served upon defendant a summons and complaint commencing the instant third action for a divorce. On the same date, the parties entered into a second “stipulation of settlement” which purportedly amended the prior agreement. The second stipulation states that the parties have separated and that it is their intention to live separate and apart from each other. It further provides that the provision of the first agreement pertaining to the disposition of L & S Salon “is hereby deleted” and it sets forth a new provision requiring that defendant “shall transfer to [plaintiff] her stock ownership in L & S Salon” and “execute a resignation” from the company. In addition, the second stipulation provides that defendant waives her half interest in the marital premises.
Plaintiff now moves in the third action for an order directing defendant to vacate the business premises. He states that he has permitted defendant to continue working at L & S Salon as a manager, but claims that she is refusing to account for any income taken in by the business and that she has vowed to “run [the business] into the ground”. Plaintiff asserts that under the second agreement he is the owner of L & S Salon and that defendant “can no longer work there nor manage same.”
Defendant states in opposition that the alleged agreement is invalid and unenforceable. She asserts that the agreement is “blatantly unfair” and one-sided, since it gives her husband ownership of a business owned and built *784 by both parties, and deprives her of a means of earning a livelihood and supporting her four children. According to defendant, the agreement was obtained through trickery and “Machiavellian deception” in that it was drawn up by plaintiff’s attorney and signed by defendant in the mistaken belief that this attorney was counsel for the parties’ joint interests. Furthermore, defendant alleges that after she signed the agreement the parties once again reconciled, and she was led to believe that her husband’s divorce action had been discontinued.
Plaintiff’s attorney, in reply, denies that he misled defendant into thinking that he was representing her interests. He does not dispute, however, that he was aware that defendant was without counsel when she signed the agreement, even though the agreement specifically states that “[e]ach of the parties represents to the other that they have had an opportunity to consult with an attorney of their own choosing prior to the [agreement’s] execution”.
DISCUSSION
Although, as a general rule, a person is bound by what he or she signs, agreements between spouses are subject to closer judicial scrutiny than ordinary business contracts. (Christian v Christian, 42 NY2d 63, 71-72.) In Christian the Court of Appeals explained that
“[agreements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith * * * There is a strict surveillance of all transactions between married persons, especially separation agreements * * * Equity is so zealous in this respect that a separation agreement may be set aside on grounds that would be insufficient to vitiate an ordinary contract * * * These principles in mind, courts have thrown their cloak of protection about separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity * * *
“To warrant equity’s intervention, no actual fraud need be shown, for relief will be granted if the settlement is manifestly unfair to a spouse because of the other’s over *785 reaching * * * In determining whether a separation agreement is invalid, courts may look at the terms of the agreement to see if there is an inference, or even a negative inference, of overreaching in its execution. If the execution of the agreement, however, be fair, no further inquiry will be made” (supra, at pp 72-73).
Christian (supra) specifically incorporated into the law of domestic relations the equitable doctrine of unconscionability, namely, that a contract will not be enforced if the inequality of bargain is “ ‘so strong and manifest as to shock the conscience and confound the judgment of any man of common sense.’ ” (Mandel v Liebman, 303 NY 88, 94, quoting Osgood v Franklin, 2 Johns Ch 1, 23 [opn of Chancellor Kent], affd sub nom. Franklin v Osgood, 14 Johns 527.) The doctrine is particularly applicable in cases where one party was not adequately represented by counsel. (See Herrington v Herrington, 56 NY2d 580, 582 [Meyer, J., and Jasen, J., concurring] [where one spouse’s attorney represents both parties in negotiation of separation agreement, inference of overreaching may be drawn]; Bartlett v Bartlett, 84 AD2d 800 [same]; Stern v Stern, 63 AD2d 700 [same]; 11A Zett-Edmonds-Schwartz, NY Civ Prac, § 23.07 [1], at p 23-99 [Aug., 1983 Supp, at p 47]; cf. Riemer v Riemer, 31 AD2d 482, 485, affd 31 NY2d 881 [hearing unnecessary where agreement fair on its face and parties each represented by counsel during negotiations].)
Although not raised by either party, the question presents itself whether the Christian rule has been modified or abrogated by the 1980 amendments to the Domestic Relations Law which adopted equitable distribution. Section 236 (part B, subd 3, pars [2]-[4]) now specifically provides that agreements relating to division of marital property, maintenance, and other issues, “shall be valid and enforceable” in a matrimonial action. However, only paragraph (3), pertaining to maintenance agreements, further provides that in order for the agreement to be enforced it must be fair and reasonable when made and not unconscionable at the time of final judgment.
The commentators have disagreed sharply as to the effect of this legislative amendment upon marital property settlements. According to one leading commentator, because the fair and not unconscionable language is written *786 only in the maintenance agreement subsection of the statute, a property agreement is not “subject to review for fairness, reasonableness, and unconscionability.” (Scheinkman, 1981 Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law, C236B:5, p 119.) In his view, such an agreement can be set aside only on the grounds of fraud or duress. (Ibid.)
In marked contrast, a leading domestic relations practice text opines that the legislative intent was that property agreements should be subject to the same standard as is applied to maintenance agreements. (11C Zett-EdmondsSchwartz, NY Civ Prac, § 61.04 [2] [a].) While the text acknowledges that “there is still much confusion as to the standard to be applied”, it anticipates that “New York courts, when faced with a property settlement distributing marital and separate property, will judge such by applying the standard of fairness, reasonableness and conscionability” set forth in the maintenance agreement subsection of the statute. (Id., pp 61-11, 61-12.)
If the Practice Commentary is correct, then Christian (supra) has been legislatively overruled, and unconscionability is no longer a defense to an action to enforce a marital property agreement. If, on the other hand, the New York Civil Practice text is correct, the Christian rule has been broadened by the statute in two respects: (1) by permitting the court to apply a “fair and reasonable when made” rule, rather than the far more stringent standard of Christian requiring a finding that the agreement was “manifestly unfair” when executed; and (2) by permitting a court to set aside an agreement that has become unconscionable by the time of final judgment, rather than limiting the court to the Christian inquiry of whether the agreement was unconscionable when made. For the reasons that follow, this court respectfully disagrees with both commentators, and concludes that the Christian rule — namely, that an agreement which is unconscionable when made will not be enforced — continues to apply to marital property agreements.
Firstly, the court cannot accept the argument advanced in the Practice Commentary that a property agreement between spouses is no longer “subject to review for uncon *787 scionability” (op. cit., p 119). There is nothing in the legislative history to suggest that the Legislature intended to exempt unconscionable property settlements from judicial review. (See 11C Zett-Edmonds-Schwartz, NY Civ Prac, § 61.04 [2] [a].) Moreover, as is pointed out above, the unconscionability rule written into the maintenance agreement paragraph of the statute is broader than the Christian rule in several respects. Consequently, under sound principles of statutory construction, it cannot be inferred that by broadening the Christian rule with respect to maintenance agreements the Legislature intended to abrogate Christian with respect to property agreements. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 153 [“(a) change in long established rules of law is not deemed to have been intended by the Legislature in the absence of a clear manifestation of such intention”]; cf. McKinney’s Cons Laws of NY, Book 1, Statutes, § 240 [the maxim expressio unius est exclusio alterius is not an ironbound rule of law excluding in all cases from the operation of a statute those things which are not enumerated therein; it should be applied to accomplish the legislative intention, not to defeat it].)
But nor can the court accept the contention that the broader “fair and reasonable when made and not unconscionable at final judgment” statutory test for maintenance agreements applies equally to marital property agreements. Although the Practice Commentary suggests (id., C236B:5) that this language was inserted into the maintenance subdivision only due to a clerical error, it is not the proper role of this court to rewrite the statute. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 73.) If in fact an error was made, it is for the Legislature, not the court, to correct. (Ibid.; see Meltzer v Koenigsberg, 302 NY 523, 525; Matter of State of New York v Strong Oil Co., 105 Misc 2d 803, 809, affd 87 AD2d 374.)
Moreover, it is more likely than not that the Legislature intended to apply a broader test of unconscionability to maintenance agreements than to property settlements.
Maintenance agreements are intended to take effect in the future and hence are inherently weakened by the inability of the parties to accurately foresee their future *788 circumstances. In addition, the level of maintenance can spell the difference between feast and famine and thus implicates very strong public concerns that a spouse not become a public charge. (See General Obligations Law, § 5-311.)
On the other hand, property dispositions do not normally have the same impact on a spouse’s standard of living as do maintenance agreements. Furthermore, the Legislature clearly intended to encourage property dispositions by contract, as an alternative to the previous disposition of property through title ownership. Obviously, the stability, and hence the efficaciousness, of such agreements would be severely undermined if they could be overturned years after execution upon a finding that an agreement was “unfair” when made or that it became “unconscionable” over time.
Accordingly, the court cannot agree that the broader statutory test of unconscionability applies to property settlements. The traditional Christian test continues to be applicable.
Applying Christian (supra) to the facts at bar, the court finds that defendant has raised a sufficiently strong claim of overreaching and unconscionability to warrant a hearing as to the circumstances surrounding the execution of the second stipulation. Defendant gave up all her rights to the jointly owned business and jointly owned marital home by signing the stipulation, but she received nothing in return. The fact that she gave away her livelihood and home, alone, strongly suggests that the agreement was a “manifestly unfair” and unconscionable bargain when made. (See Christian v Christian, 42 NY2d, at pp 71-72.)
Moreover, a clear inference of overreaching arises since it is undisputed that the document was drafted by plaintiff’s attorney and signed by defendant when she was not represented by counsel. (See Herrington v Herrington, 56 NY2d, at p 582; Bartlett v Bartlett, 84 AD2d 800, supra; Stern v Stern, 63 AD2d 700, supra.) Although the agreement contains a provision which states that the parties had consulted with counsel prior to its signing, plaintiff’s attorney admits that he was aware that defendant had not consulted with any other attorney before the document was *789 executed. Under these circumstances, defendant is entitled to a hearing at which she can seek to prove that the second stipulation was so unconscionable when made that it should not be enforced. (See Christian v Christian, 42 NY2d, at pp 72-73.)
At the hearing to be held hereafter, defendant may also seek to establish there was an executed oral discharge or modification of the stipulation as evidenced by the parties’ actions disregarding some or all of its terms, or that a waiver occurred after the second reconciliation. (See 11A Zett-Edmonds-Schwartz, NY Civ Prac, § 23.07 [3] [a]; [8].) Not only does it appear from plaintiff’s affidavits that the parties may have ignored the provisions of the second stipulation wherein defendant waived her rights to half of the proceeds from the sale of the marital premises; more importantly, there is no question but that the parties did ignore the provision concerning defendant’s surrender of ownership in the business for months after the reconciliation. The court notes that even though the stipulation contains a standard clause prohibiting any change except in writing, proof of an oral modification or discharge may be offered. See Rose v Spa Realty Assoc. (42 NY2d 338, 343), where the Court of Appeals observed: “when the oral agreement to modify has in fact been acted upon to completion, the same need to protect the integrity of the written agreement from false claims of modification does not arise. In such case, not only may past oral discussions be relied upon to test the alleged modification, but the actions taken may demonstrate, objectively, the nature and extent of the modification. Moreover, apart from statute, a contract once made can be unmade, and a contractual prohibition against oral modification may itself be waived (Beatty v Guggenheim Exploration Co., 225 NY 380, 387-388).”
In conclusion, a hearing is ordered to determine the issues raised by this motion.