**10** SLAVINA GARDELLA, Respondent, v EMIL REMIZOV, Appellant. [42 NYS3d 225]—

Appeal by the defendant from stated portions of a judgment of divorce of the Supreme Court, Nassau County (Edward A. Maron, J.), entered February 18, 2014. The judgment, inter alia, implemented the provisions of the parties' separation agreement.

Ordered that the judgment is modified, on the law, by deleting the third through tenth decretal paragraphs thereof; as so modified, the judgment is affirmed insofar as appealed from, with costs to the defendant, those branches of the plaintiff's motion which were for summary judgment dismissing the defendant's first and second counterclaims are denied, the defendant's first and second counterclaims are reinstated, the order dated January 31, 2013, is modified accordingly, the order dated August 15, 2013, is vacated, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith and thereafter the entry of an appropriate amended judgment of divorce.

The parties to this matrimonial action were married in 2000. In October 2002, the parties entered into a postnuptial agreement (hereinafter the 2002 postnuptial agreement), which provided, among other things, that the marital residence and the plaintiff's private medical practice were the plaintiff's separate property. In 2006, the parties entered into a second postnuptial agreement (hereinafter the 2006 postnuptial agreement), which provided that four parcels of real property in Florida acquired by the parties during the marriage had been

purchased with the plaintiff's separate property, and further addressed the distribution of those four parcels in the event of a divorce. In 2010, the parties entered into a separation agreement, which addressed, inter alia, issues of maintenance and equitable distribution of the parties' respective assets. At the time, the plaintiff, a neurologist, was earning approximately $600,000 per year, and the defendant, a wine salesman, was earning approximately $40,000. The separation agreement provided, among other things, that the defendant would have no interest in any of the assets acquired during the parties' marriage, including six parcels of real property, the plaintiff's partnership interest in a neurological practice, and the plaintiff's bank and brokerage accounts, and that he waived his right to spousal maintenance. The defendant was not represented by counsel when he executed the separation agreement.

In November 2011, the plaintiff commenced this action for a divorce and ancillary relief, and asked the Supreme Court for a judgment of divorce which incorporated but did not merge the terms of the separation agreement. In his answer, the defendant asserted counterclaims seeking to vacate the separation agreement and the 2006 postnuptial agreement as unconscionable and the product of fraud, duress, and the plaintiff's overreaching. The plaintiff moved for summary judgment dismissing the defendant's counterclaims and for the entry of a judgment of divorce. The defendant cross-moved for summary judgment on his counterclaims, to nullify the 2002 postnuptial agreement for lack of acknowledgment, and for financial disclosure. By order dated January 31, 2013, the court granted the plaintiff's motion for summary judgment dismissing the defendant's counterclaims and denied the defendant's cross motion. The defendant thereafter moved for leave to reargue his opposition to the plaintiff's motion for summary judgment, and to renew his cross motion for summary judgment. By order dated August 15, 2013, the court granted reargument and renewal and, thereupon, adhered to its original determination. By judgment entered February 18, 2014, the court dissolved the parties' marriage. The defendant appeals from the judgment.

" 'Marital settlement agreements are judicially favored and are not to be easily set aside' " (*Glover v Glover*, 137 AD3d 745, 746 [2016], quoting *Simkin v Blank*, 19 NY3d 46, 52 [2012]). " 'A separation agreement or stipulation of settlement which is fair on its face will be enforced according to its terms unless there is proof of fraud, duress, overreaching, or unconscionability' " (*Hughes v Hughes*, 131 AD3d 1207, 1208 [2015], quoting

*Kabir v Kabir*, 85 AD3d 1127, 1127 [2011]; *see Christian v Christian*, 42 NY2d 63, 72-73 [1977]). "Although judicial review of such agreements is to be exercised sparingly, with the goal of encouraging parties to settle their differences by themselves . . . 'courts have thrown their cloak of protection' over postnuptial agreements, 'and made it their business, when confronted, to see to it that they are arrived at fairly and equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity' " (*Kabir v Kabir*, 85 AD3d at 1127, quoting *Christian v Christian*, 42 NY2d at 72). "Thus, '[i]n view of the fiduciary relationship existing between spouses, separation agreements are more closely scrutinized by the courts than ordinary contracts' " (*Kabir v Kabir*, 85 AD3d at 1127, quoting *Cardinal v Cardinal*, 275 AD2d 756, 757 [2000]; *see Christian v Christian*, 42 NY2d at 72).

"An agreement is unconscionable if it 'is one which no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense' " (*Sanfilippo v Sanfilippo*, 137 AD3d 773, 774 [2016], quoting *Label v Label*, 70 AD3d 898, 899 [2010]; *see Hof v Hof*, 131 AD3d 579, 580 [2015]). In addition, "[a]lthough courts may examine the terms of the agreement as well as the surrounding circumstances to ascertain whether there has been overreaching, the general rule is that if the execution of the agreement is fair, no further inquiry will be made" (*Kerr v Kerr*, 8 AD3d 626, 627 [2004]; *see Levine v Levine*, 56 NY2d 42, 47 [1982]; *Jon v Jon*, 123 AD3d 979, 980 [2014]).

In determining a motion for summary judgment, "the court must view the evidence in a light most favorable to the nonmoving party . . . and afford such party the benefit of every favorable inference" (*McKenna v McKenna*, 121 AD3d 864, 865 [2014]). "A 'motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility' " (*McKenna v McKenna*, 121 AD3d at 865, quoting *Ruiz v Griffin*, 71 AD3d 1112, 1115 [2010]).

The plaintiff demonstrated her prima facie entitlement to judgment as a matter of law dismissing the defendant's first and second counterclaims, which sought to vacate the separation agreement (*see McKenna v McKenna*, 121 AD3d at 866). The separation agreement recited that each party entered into the agreement of his or her own "volition and free will," without

the use of "coercion, force, pressure or undue influence," and that each of them either had been afforded an opportunity to obtain counsel or had waived the right to do so. The separation agreement contained a clause stating that both parties had a "full awareness" of the assets and financial condition of the other, or had waived discovery of the same. The plaintiff also submitted a separate affidavit executed by the defendant contemporaneously with the separation agreement in which he stated that he had read the separation agreement "word for word," that he understood its contents, that it was executed voluntarily and of his own free will, and that he chose not to seek the advice of counsel (see *McKenna v McKenna*, 121 AD3d at 866; *Croote-Fluno v Fluno*, 289 AD2d 669, 670 [2001]).

In opposition to the plaintiff's prima facie showing, the defendant's submissions were sufficient to raise triable issues of fact as to the validity of the separation agreement. Under the terms of the separation agreement, the defendant relinquished all of the property rights that he acquired during the marriage, including any interest that he may have had in the plaintiff's partnership interest in a neurological practice and the parties' four properties in Florida, as well as any spousal maintenance. Given the vast disparity in the parties' earnings, the evidence that the defendant had no assets of value, and the defendant's documented medical condition which inhibits his future earning capacity, the defendant's submissions were sufficient to create an inference that the separation agreement was unconscionable (see Domestic Relations Law § 236 [B] [3] [3]; *Christian v Christian*, 42 NY2d at 71; *Smith v Smith*, 129 AD3d 934, 935 [2015]; *Petracca v Petracca*, 101 AD3d 695 [2012]; *Barocas v Barocas*, 94 AD3d 551, 552 [2012]). In addition, the defendant's evidence indicating that the plaintiff sold almost $1 million in securities in the months preceding his execution of the separation agreement, the value of which were not accounted for in the list of her bank and brokerage accounts therein, raises a triable issue of fact as to whether the plaintiff concealed assets (see *Christian v Christian*, 42 NY2d at 72-73; *Kabir v Kabir*, 85 AD3d at 1127). Under these circumstances, the Supreme Court should have exercised its equitable powers and directed further financial disclosure, to be followed by a hearing to test the validity of the separation agreement (see *Kabir v Kabir*, 85 AD3d 1127 [2011]; *Berkman v Berkman*, 287 AD2d 426 [2001]). Accordingly, upon remittal, the court should direct financial disclosure and thereafter conduct such a hearing.

However, contrary to the defendant's contention, the Supreme Court properly awarded the plaintiff summary judg-

ment dismissing the defendant's third counterclaim, which sought to vacate the 2006 postnuptial agreement (*see Sanfilippo v Sanfilippo*, 137 AD3d at 774). In addition, while the defendant correctly contends that the 2002 postnuptial agreement was not properly acknowledged in the manner required by Domestic Relations Law § 236 (B) (3) (*see Galetta v Galetta*, 21 NY3d 186, 192 [2013]), the evidence establishes that the defendant ratified that agreement by accepting the benefits of it and by waiting more than eight years to seek its nullification (*see Rio v Rio*, 110 AD3d 1051, 1054 [2013]; *Percoco v Lesnak*, 24 AD3d 427, 428 [2005]; *Riley v Riley*, 179 AD2d 750 [1992]). Accordingly, upon remittal, no inquiry into the validity of the 2002 postnuptial agreement or the 2006 postnuptial agreement will be necessary or warranted. Leventhal, J.P., Miller, LaSalle and Brathwaite Nelson, JJ., concur.