Campbell v Campbell (2022 NY Slip Op 04875)

Campbell v Campbell

2022 NY Slip Op 04875

Decided on August 4, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 4, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CENTRA, LINDLEY, AND BANNISTER, JJ.

563 CA 21-01114

[*1]KEITH A. CAMPBELL, PLAINTIFF-RESPONDENT,
v
JULIE A. CAMPBELL, DEFENDANT-APPELLANT. 

TABANO & ASSOCIATES, PLLC, LATHAM (MARIA C. TEBANO OF COUNSEL), FOR DEFENDANT-APPELLANT. 
CHARLES W. ENGELBRECHT, ROME, FOR PLAINTIFF-RESPONDENT.

 Appeal from an order of the Supreme Court, Herkimer County (John H. Crandall, A.J.), entered June 22, 2021 in a divorce action. The order determined that the parties' August 31, 2017 postnuptial agreement was invalid and unenforceable as a matter of law. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs and the counterclaim in the second amended answer is granted insofar as it seeks a determination that the August 31, 2017 postnuptial agreement is valid and enforceable as a matter of law.
Memorandum: The parties were married in June 1989 and entered into a postnuptial agreement on August 31, 2017 (2017 agreement). They had entered into two prior postnuptial agreements in 2010 and 2013, which, like the 2017 agreement, set forth the financial separation of their assets and obligations in the event of divorce. Unlike the 2017 agreement, however, the prior agreements were never properly acknowledged pursuant to Domestic Relations Law § 236 (B) (3). In July 2019, plaintiff commenced this action for divorce. Defendant served a second amended answer with a counterclaim seeking, inter alia, to incorporate but not merge into the judgment of divorce the 2017 agreement. In reply, plaintiff asserted affirmative defenses alleging that the 2017 agreement should be found null and void or set aside on the grounds that, inter alia, he signed the 2017 agreement under duress and that the 2017 agreement was unconscionable. Thereafter, defendant moved for summary judgment seeking, inter alia, an order dismissing plaintiff's affirmative defenses and determining that the 2017 agreement is valid and enforceable. Following a hearing, Supreme Court concluded that, based on the totality of the circumstances, including plaintiff's allegations of emotional abuse in connection with the execution of the 2017 agreement, the 2017 agreement was unconscionable and manifestly unfair. Thus, the court determined that the 2017 agreement was invalid and unenforceable as a matter of law. Defendant appeals, and we reverse.
In general, postnuptial agreements are subject to ordinary principles of contract law (see Levine v Levine, 56 NY2d 42, 47 [1982]; O'Malley v O'Malley, 41 AD3d 449, 451 [2d Dept 2007]). New York has a "strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements" (Matter of Greiff, 92 NY2d 341, 344 [1998]; see Bloomfield v Bloomfield, 97 NY2d 188, 193 [2001]). Thus, "there is a heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties" (Chimart Assoc. v Paul, 66 NY2d 570, 574 [1986] [internal quotation marks omitted]). However, an agreement between spouses may nevertheless be invalidated if the party challenging the agreement demonstrates that it was the product of fraud, duress, or other inequitable conduct (see Christian v Christian, 42 NY2d 63, 73 [1977]; Skotnicki v Skotnicki, 237 AD2d 974, 974-975 [4th Dept 1997]; see generally Tuzzolino v Tuzzolino, 156 AD3d 1402, 1403 [4th Dept 2017]).
Initially, we conclude that the court erred insofar as it held that plaintiff signed the 2017 agreement under duress as a result of defendant's emotional abuse. An agreement is voidable on the ground of duress "when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his [or her] free will" (Austin Instrument v Loral Corp., 29 NY2d 124, 130 [1971], rearg denied 29 NY2d 749 [1971]). Generally, "the aggrieved party must demonstrate that threats of an unlawful act compelled his or her performance of an act which he or she had the legal right to abstain from performing" (Polito v Polito, 121 AD2d 614, 614-615 [2d Dept 1986], lv dismissed 68 NY2d 981 [1986]). "[T]he threat must be such as to deprive the party of the exercise of free will" (id. at 615). Here, even accepting as true plaintiff's allegations that defendant persistently urged him to sign the 2017 agreement and threatened to tell the parties' children of plaintiff's wrongful actions in the past, such conduct did not amount to any unlawful acts on the part of defendant sufficient to constitute duress (see generally Dawes v Dawes, 110 AD3d 1450, 1451 [4th Dept 2013]).
We further conclude that, contrary to the court's determination, plaintiff failed to sustain his burden of establishing that the 2017 agreement was unconscionable. "An agreement is unconscionable if it is one which no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense" (Sanfilippo v Sanfilippo, 137 AD3d 773, 774 [2d Dept 2016] [internal quotation marks omitted]; see Christian, 42 NY2d at 71; Skotnicki, 237 AD2d at 975). The fact that defendant was represented by counsel but plaintiff was not is a factor for the court to consider, but is not dispositive (see Tuzzolino, 156 AD3d at 1403). As relevant here, in the 2017 agreement each party waived his or her rights in the other party's separate property, which was defined in that agreement. Included in defendant's separate property was any property acquired in her name alone, as well as her checking account, the marital residence, which she purchased from the proceeds of a home she previously owned, her 401k account, her retirement pension and other assets. Included in plaintiff's separate property was any property acquired in his name alone, as well his checking accounts, his two 401k accounts, and other assets. Additionally, the parties waived any right to receive maintenance. Plaintiff does not dispute that he signed the three postnuptial agreements during the course of the marriage, and the testimony of both parties revealed that the parties conducted their finances in accordance with the terms of the agreements. Thus, it cannot be said that the 2017 agreement was such that it would "shock the conscience and confound the judgment of any [person] of common sense" (Christian, 42 NY2d at 71; cf. Dawes, 110 AD3d at 1451). We therefore conclude that the 2017 agreement is not unconscionable, nor was it the product of overreaching by defendant and, thus, the court erred in determining that the 2017 agreement is invalid and unenforceable as a matter of law.
Entered: August 4, 2022
Ann Dillon Flynn
Clerk of the Court