In the Matter of ADELAIDE CLEMENT, Appellant, v ABE LAVINE, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Fourth Department, December 17, 1975

*Barrett, Maier & Barrett, P. C. (Dennis T. Barrett* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Eileen A. Sullivan* and *Jean M. Coon* of counsel), for Abe Lavine and another, respondents.

*Lawrence Tranello (Sam DiLalla* of counsel), for James Reed and another, respondents.

SIMONS, J. The issue on this appeal is what recourse does the Department of Social Services have, if any, when a recipient presently receiving public assistance, transfers[1] without fair consideration, her only resource (a dwelling house and 21-acre farm) to a relative not legally responsible for the recipient's support (Social Services Law, § 101).

Appellant Adelaide Clement is 79 years old. She and her husband were certified for medicaid assistance in 1969 and she has received such assistance continuously since that time (Mr. Clement died in July, 1971 but he received assistance until his death). At the time that Mr. and Mrs. Clement applied for assistance in 1969 they informed the Monroe County Department of Social Services that they owned a farmhouse and 21 acres of land in Webster, New York, as tenants by the entirety. Shortly after her husband's death appellant transferred this property to her son, reserving a life use of the property to herself. The deed showed no monetary consideration for the conveyance. The transfer was recorded in the Monroe County Clerk's office but the County Department of Social Services did not learn of it until appellant applied for recertification in February, 1974. The county department

---

1. The property owned by the recipient was subject to lien after the recipient's death, but not before, and available for recoupment of the public funds advanced (Social Services Law, § 369, subd 1, par [b], cf. former Social Welfare Law, §§ 321, 322 repealed by L 1974, ch 1080, § 3). After transfer, of course, it was not.

recertified appellant for assistance at that time, "subject to the property in question being transferred back to A. Clement, patient." When appellant and her son refused to do this the county department discontinued appellant's medicaid assistance on the ground that she had voluntarily transferred an available resource to make herself eligible for public assistance. Respondent commissioner affirmed the County Department of Social Services after a fair hearing.

A person may not transfer available resources for the purpose of receiving public assistance (Social Services Law, § 366, subd 1, par [e]; 18 NYCRR 360.8 [c]). In determining eligibility for assistance a homestead is exempt (Social Services Law, § 366, subd 2, par [a], cl [1]; 18 NYCRR 360.6 [b]) and the transfer of an exempt homestead does not result in the loss of eligibility (18 NYCRR 360.8 [a]). While property qualifying as a homestead may continue as such and be exempt during a period of hospitalization (18 NYCRR 360.6 [b]), the commissioner specifically found that at the time of transfer appellant's property did not qualify as a homestead because it is not expected that Mrs. Clement will ever be discharged from the hospital. He therefore found the real estate was an available resource to her and that it was transferred for the purpose of obtaining public assistance in violation of the statutes and regulations (see *Mondello v D'Elia,* 49 AD2d 582). There was substantial evidence to support his decision.

Appellant's son contended that the transfer was pursuant to an "oral contract" made about 10 years earlier. The commissioner refused to accept this evidence, finding that the contract was unenforceable and represented nothing more than a vaguely expressed intention that the son was the natural beneficiary of his parents' property after their deaths. His findings were supported by evidence that the ownership (except for the life estate reserved to the chronically ill grantor) was transferred without fair consideration and by deed, promptly after the death of appellant's husband, rather than by the customary method of testamentary disposition. The only consideration alleged for the transfer was love and affection and the care of the property by the son, services for which presumably he was fairly compensated by being permitted to live on the farm, rent free (cf. *Sweeney v D'Elia,* 49 AD2d 593). The explanation that the transfer was to enable the son to put up collateral for a funeral loan is not convinc-

ing. The property could have remained in appellant's name and been used for such purpose.

Respondents concede that there was no actual fraud. Nevertheless, the transfer is not unlike a transfer made by an insolvent debtor without fair consideration which is impliedly fraudulent as to the grantor's creditors (cf. Debtor and Creditor Law, § 273 *et seq.* and *Matter of Arlasky v Dimitri,* 38 AD2d 665). The commissioner could properly find on this record that the parties' actions were calculated to preserve ownership of the farm while maintaining the recipient's eligibility for assistance.

Appellant argues that the transfer was more than one year after certification and more than one year before the application for recertification in 1974 and, therefore, that the statutory presumption that the transfer was made to obtain benefits does not apply (see Social Services Law, § 366, subd 1, par [e]; 18 NYCRR 360.8 [b]). It is enough to say that the commissioner did not rely upon the presumption and that there was substantial evidence to support his decision without it, but appellant's position loses a good deal of its force in view of her failure, contrary to statute, to inform fully the department of changes in her financial position (Social Services Law, § 366-a, subd 5-a).

The fact remains that the transfer was made without fair consideration at a time when appellant had received substantial benefits, was receiving benefits and thereafter continued to receive benefits. Perhaps the department should have recertified the patient each year as its regulations now require (surely its denial would have passed muster if it had denied recertification within a year of the transfer), but its failure to do so does not estop it from questioning the transfer at this time. The taxpayers have assumed the responsibility of supporting our chronically ill and aged citizens—but they have not guaranteed the inheritance of the heirs of the unfortunately sick (Social Services Law, § 363).

The judgment should be affirmed.

CARDAMONE, J. (dissenting). Appellant, Adelaide Clement, has been hospitalized and continuously receiving Medicaid assistance since 1969. Her husband was also receiving Medicaid assistance until his death in July, 1971. At all times when receiving this assistance, they owned a farmhouse and 21 acres of land as tenants by the entirety. The Monroe

County Department of Social Services was aware of their ownership of this property when both appellant and her husband applied for and were deemed statutorily eligible for medical assistance. On September 29, 1971, two months after her husband's death, appellant transferred said property to her son retaining "to herself the life use of the property". The transfer was duly recorded in the Monroe County Clerk's office. The county department first learned of the transfer in February, 1974 when appellant applied for recertification.

The sole question on this appeal is whether the county department properly determined that appellant was statutorily ineligible for medical assistance under section 366 of the Social Services Law. In our view the determination was erroneous for several reasons.

First, no evidence supports a finding that appellant has sufficient resources to meet the cost of required medical care. Appellant held only a life estate in the family farm and was otherwise penniless and bedridden at the time respondents denied her recertification application. Although the finding that the farm property no longer constituted an exempt homestead may have been correct (Social Services Law, § 366, subd 2, par [a]; 18 NYCRR 360.23 [b], 360.6 [b], [c]), the fact that appellant no longer owned that asset makes such a finding irrelevant to a determination of her financial need.

Second, the only remaining statutory basis for holding appellant ineligible for medical assistance is that she made a voluntary transfer of property (i.e., the family farm) "for the purpose of qualifying for such assistance" (Social Services Law, § 366, subd 1, par [e]). No evidence, however, supports a finding that appellant transferred the farm to her son for such an improper purpose. The only evidence of her intent introduced at the fair hearing was that she deeded the property to her son in September, 1971, two months after her husband's death, out of love and affection for the son, who had been living on, and caring for, the property for several years during his parents' illnesses. The son testified that his parents had orally promised to give the property to him 10 years earlier in exchange for the work which he had done and continued to do since early childhood; he also explained that he needed the property immediately after his father's death to secure borrowed cash to pay funeral expenses. No evidence was produced showing that the appellant knew, or had been advised, of the eligibility requirements for Medicaid at the time of this

transfer; the son stated quite plausibly that he knew nothing about the eligibility rules until he took the recertification application to his mother's attorney two and one half years later. Even the respondents concede that no fraud was involved in the appellant's actions. To equate this evidence of the appellant's love for, and indebtedness to, her dutiful son with proof of a purpose to become eligible for Medicaid, as the majority does, ignores not only the established economic facts of the family situation revealed in the record, but also the tried and true impulses of the human heart. In short, the majority's conclusion that appellant's purpose was to qualify for Medicaid rests only on surmise but not on fact.

Had the respondents required annual recertification for medical assistance as mandated by the regulations, they would have had the benefit of a statutory presumption that a "transfer of property made within one year of the date of application shall be presumed to have been made for the purpose of qualifying for such assistance" (Social Services Law, § 366, subd 1, par [e]; 18 NYCRR 360.8).

Because the contested transfer here was made two and one half years prior to the recertification application, however, the statutory presumption is inapplicable. Nor does the appellant's failure to disclose the transfer sooner provide legitimate grounds for denying her medical assistance (cf. Social Services Law, § 366-a, subd 5-a).

Finally, one might readily concur with the majority's assertion that the public purse does not guarantee an inheritance to heirs of the chronically ill and aged. Indeed, the statute allows recovery of medical assistance from the estate of a decedent who received assistance after age 65 (Social Services Law, § 369, subd 1, par [b]). The government's rights against the petitioner's heirs are not involved in the present case, however. The sole issue here is whether the appellant is eligible for medical assistance *while alive*. In deciding that question the respondents must act in accordance with the Social Services Law and the evidence produced at the hearing. If an applicant satisfies the eligibility requirements, the county department has a statutory duty to furnish medical assistance (Social Services Law, § 365, subd 1; see, also, NY Const, art XVII, § 1; Social Services Law, § 131, subd 1). Thus the majority's analogy to the Debtor and Creditor Law and transfers in fraud of creditors is wholly inapposite.

In view of appellant's undisputed financial need, the respon-

dents' concession that no fraud was involved, and the lack of proof that the property was transferred to the son for the purpose of qualifying for medical assistance, the respondents had no lawful basis for terminating appellant's assistance.

MARSH, P. J., and MOULE, J., concur with SIMONS, J.; CARDAMONE and GOLDMAN, JJ., dissent and vote to reverse the judgment and grant the petition in opinion by CARDAMONE, J.

Judgment affirmed, without costs.