*320 OPINION OF THE COURT
Brian F. DeJoseph, J.
This is an action for absolute divorce and rescission of a contract entered into by the parties. Issue was joined when the defendant interposed a verified answer and counterclaim. Plaintiff duly served a reply to defendant’s counterclaims. Following the joinder of issue, defendant has filed this motion seeking an order of this court granting summary judgment to her, pursuant to CPLR 3212, for the following: (1) a judgment of divorce in favor of the defendant on the grounds of substantial compliance with the terms of a separation agreement entered into by the parties more than one year prior hereto; (2) dismissing plaintiff’s action for rescission of said separation agreement; and (3) dismissing plaintiffs complaint for divorce based on cruel and inhuman treatment and abandonment. Plaintiff has opposed such relief and has filed a cross motion seeking an order of this court: (1) denying defendant’s motion in its entirety; (2) allowing plaintiff to amend his pleadings to correct an erroneous date of the separation agreement; (3) restraining the defendant from dissipating, transferring, encumbering, selling, or otherwise alienating any property in which the defendant has any individual or joint interest; and (4) the issuance of a judicial subpoena duces tecum for a nonparty witness. Following oral arguments by counsel on said applications, the court, at the request of counsel, kept the record open to allow filing of legal memoranda, the last of which was filed on November 30, 2001.
As set forth in the pleadings and moving papers submitted by the parties, it appears that the plaintiff and defendant, who were married in 1970, experienced certain problems in their marriage, culminating in the execution of a separation agreement by them on or about August 13,1996. Defendant contends that there has been substantial compliance with the terms of the agreement and that therefore she is entitled to a “conversion” divorce pursuant to Domestic Relations Law § 170 (6). She also seeks incorporation of the separation agreement into the divorce decree. Plaintiff does not actually deny that defendant has complied with the terms of the agreement, but rather contends that the entire agreement is invalid due to “overreaching,” that the agreement “violates statutory standards,” that the agreement was executed under duress, that plaintiff was under mental and emotional disability when he signed the agreement, that plaintiff did not have independent counsel representing and advising him, and that said agreement was, and still is, unfair, unreasonable, and unconscionable.
*321 The document entitled “separation agreement” was executed and acknowledged by the parties on August 13, 1996. On its face, it appears that said agreement sets forth mutual consideration for the respective obligations of the parties, that neither party was represented by an attorney in the negotiation, preparation and execution of said agreement, and that the notary public before whom the parties appeared was John Yuhas, Esq., who also drafted said agreement. Among the benefits derived by the plaintiff in said agreement were: waiver by the defendant of a claim for child support and maintenance; defendant’s waiver of any interest in plaintiff’s business and business assets; defendant’s waiver of any claim for an extensive number of items of personal property; equal distribution of investment proceeds; defendant’s waiver of any claim in the motor vehicle used by the plaintiff; a pro rata sharing of any tax refund/deficiency; and a hold harmless and indemnification obligation by the defendant for mortgage debt, taxes, utilities, maintenance and other indebtedness associated with two parcels of real estate then owned by the parties, one of which was the marital domicile and the other being a rental house.
Among the benefits derived by the defendant in said agreement were: transfer of plaintiffs interest in the two parcels of real estate mentioned above; plaintiffs waiver of any interest in the motor vehicle used by defendant; one Walther .380 handgun; equal distribution of investment proceeds; custody of the parties’ unemancipated children; and a pro rata sharing of any tax refund/deficiency.
In deciding summary judgment motions, the court must search the record to determine if a triable issue of fact exists, and if so, the motion must be denied. (Andre v Pomeroy, 35 NY2d 361.) However, on a motion for summary judgment, the opposing party must lay bare his/her evidence, as if at trial, to establish his/her respective case. (Five Boro Elec. Contrs. Assn. v City of New York, 37 AD2d 807, affd 33 NY2d 676.) Moreover, in an action to set aside an agreement the burden of proof is on the party seeking rescission. (Christian v Christian, 42 NY2d 63.) In this case, plaintiff opposes the relief sought by defendant because he claims the agreement is invalid ab initio, as set forth above. The court will address each of plaintiff’s claims individually.
Initially, the plaintiff claims that at the time of execution of the agreement he was “a psychological mess,” “suffering from extreme depression and anxiety,” “felt like a complete failure,” “could not concentrate or focus,” “was extremely sad,” “cried *322 constantly,” “guilt was forever present,” “felt that life was not worth living,” and “was broke — destitute and a psychological mess.” Other than the statements made by plaintiff in his affidavits, there is no proof to support said claims. Even the medical notes attached to plaintiffs affidavit do not support the contention of plaintiff as to his mental state at the time of the signing of the agreement. In any event, nothing submitted by plaintiff even remotely indicates mental incapacity sufficient to void the agreement that he made. (Beutel v Beutel, 55 NY2d 957; Bailey v Assam, 269 AD2d 344.)
The plaintiff also claims the agreement is invalid due to overreaching and duress by the defendant. Again there is no evidence offered to support such contention. The plaintiff does not claim that the defendant hid any assets, or tricked him in any way to sign the agreement, nor does he claim that anyone threatened him in any way to coerce him into signing. Plaintiff does, however, allege that the defendant picked him up at work and drove him to the office of John Yuhas, Esq., where the agreement was signed, and that the defendant “took my separate property,” “the cash surrender value of my life insurance,” and “all of my separate funds.” In reviewing the agreement, it provides that certain identified marital funds would be used to pay marital debt, and makes no mention of any separate property of the plaintiff. The plaintiff offers no evidence of any separate funds of plaintiff that were taken by defendant. In fact the agreement indicates that each party’s separate property would remain such. (Marotta v Dinozzi, 287 AD2d 491.) Furthermore, the passage of time since the execution of the agreement militates against rescission on such ground. A party seeking to set aside an agreement on such grounds must promptly take such action as is necessary to disavow the agreement, or be held to ratify it. (Sheindlin v Sheindlin, 88 AD2d 930.)
Plaintiffs claim that the agreement violates statutory standards is misplaced. A review of plaintiffs complaint reveals that the ancillary relief he seeks, in addition to a divorce, is equitable distribution of marital property. He does not seek alimony or maintenance. Domestic Relations Law § 236 governs the allocation of marital assets/debts insofar as equitable distribution is concerned. Nowhere in the portions of the statute concerning distribution of marital assets do phrases such as “fair and reasonable” and “unconscionable” appear. In this regard, the trial court’s decision in Grubman v Grubman (NYLJ, June 8, 1992, at 29, col 1, affd 191 AD2d 194, lv denied 82 NY2d 651) is instructive. Citing the court’s holding in Pen *323 nise v Pennise (120 Misc 2d 782), the court held (at 29, col 2) “that the fair and reasonable and unconscionability test in section 236(B) (3) applies only to maintenance provisions in separation or settlement agreements and not to property settlement.” Consequently the plaintiff, in order to succeed on his claim for rescission, must demonstrate a “manifest [ ] unfairness] to one party because of the other’s overreaching or where its terms are unconscionable, or there exists fraud, collusion, mistake or accident” (Tchorzewski v Tchorzewski, 278 AD2d 869 [internal quotation marks omitted]).
To- establish unconscionability, the plaintiff has the heavy burden to establish that “[the agreement was] one [that] no [person] in his [or her] senses and not under delusion would make on the one hand, and as no honest and fair [person] would accept on the other * * * [In essence, it is the type of! inequality [that would] shock the conscience of * * * any [person] of common sense.” (Christian v Christian, supra, at 71 [internal quotation marks omitted].) As previously mentioned, the two real properties consist of the marital home and a rental home, both of which were transferred to defendant by plaintiff and defendant by warranty deeds on August 30, 1996. The jointly held investment funds, according to the agreement, were utilized to pay down marital debt, and any surplus was to be shared equally. It is not claimed that marital property was secreted or that defendant defrauded or misrepresented plaintiff with respect to the values of said properties. The plaintiff only claims at this time that the distribution of the marital property was unfair because it was an unequal distribution and because, in his present estimation, the defendant received a quarter of a million dollars worth of assets. In determining whether a triable issue of fact has been raised by plaintiff on his allegations of manifest unfairness, the court is asked to accept plaintiff’s personal statement of value, such statement being proffered without any form of evidentiary support.
Additionally, a careful review of the notes of plaintiff’s psychiatric and psychological counselors submitted by plaintiff reveals that he, at the time of the execution of the agreement, while under stress and experiencing some impairment of judgment, was well aware of the consequences of signing the agreement at the time he did so, and further, that his motive for signing the agreement was to rid himself of his feelings of guilt. (See Skotnicki v Skotnicki, 237 AD2d 974.) As of October 16, 1996, the reports indicate that plaintiff had no need of psy *324 chiatric rehabilitative assessment nor any need for case management.
Plaintiffs present claim of unconscionability is further weakened in that he has not indicated that circumstances have changed since the signing of the agreement; he sought legal advice during the year 1997, but did not object to or challenge the agreement until the present time. Despite his claimed concern about the unfairness of the agreement, he has continued to accept whatever benefits the agreement gave him for almost five years, has done nothing to object to or seek redress for the supposed wrong done to him by the terms of the agreement, paid no mortgage payments, taxes, utilities, or other expenses associated with the properties in question, and in reality, by his actions, ratified the agreement. (See La Marca v Kissell, 269 AD2d 835; Reader v Reader, 236 AD2d 829; Panaggio v Panaggio, 256 AD2d 1115; Genovese v Genovese, 243 AD2d 679; Wasserman v Wasserman, 217 AD2d 544.) Acquiescing in the agreement for an extended period of time will constitute ratification. (Gloor v Gloor, 190 AD2d 1007; Cordero v Cordero, 135 AD2d 483.)
Lastly, plaintiff claims that the agreement should be set aside because he was not represented by independent counsel at the time of the execution of said agreement. While lack of representation by a party is a significant factor to be considered by the court in determining whether the agreement should be set aside, it is not, without some extrinsic evidence of unconscionability, sufficient in and of itself to overturn the agreement. (Levine v Levine, 56 NY2d 42.) As previously mentioned, there is no allegation that the defendant hid any assets, misled the plaintiff as to the value of marital assets, including the two properties transferred, coerced the plaintiff to sign the agreement, or in any other way was guilty of overreaching. Furthermore, the plaintiff does not claim mistake, collusion, or fraud on the part of the defendant. He simply states that the agreement gave the defendant everything but the clothes on his back, an old truck, and a few hand tools. The conclusory statements of plaintiffs attorney indicating that the defendant received over one quarter of a million dollars and that defendant received “100%” of the marital estate and that defendant received “99.75%” are not supported by any evidentiary facts, and have no probative value. Accordingly, absent some proof that the agreement was not fairly and freely entered into, the lack of independent representation does not automatically nullify the agreement. (Marotta v Dinozzi, 287 AD2d 491; see also *325 Levine v Levine, supra; Forsberg v Forsberg, 219 AD2d 615.) In this particular case, it should be noted that the agreement itself, the defendant, and the drafting attorney all indicate that John Yuhas, Esq., did not represent either of the parties, but acted only as a scribe in preparing said agreement.
Separation agreements are an accepted, valid, favored, and appropriate method of opting out of the applicable provisions of Domestic Relations Law § 236 (B) (2). (Christian v Christian, supra.) While the court recognizes its obligation to scrutinize carefully such contracts in light of the sensitive fiduciary relationship of the parties (Battista v Battista, 105 AD2d 898), this court’s inquiry will not be triggered by self-serving, conclusory, unsupported or uncorroborated allegations made by a dissatisfied spouse after acquiescence and ratification of said agreement for almost five years. In Grubman v Grubman (supra, at 29, col 2), the court, again citing Pennise v Pennise, held:
“On the other hand, property dispositions do not normally have the same impact on a spouse’s standard of living as do maintenance agreements. Furthermore, the Legislature clearly intended to encourage property dispositions by contract, as an alternative to the previous disposition of property through title ownership. Obviously, the stability, and hence the efficaciousness of such agreements would be severely undermined if they could be overturned years after the execution upon a finding that the agreement was ‘unfair’ when it was made or that it became ‘unconscionable’ over time.” (Internal quotation marks omitted.)
The plaintiff has had ample opportunity during the last four years to acquire sufficient independent evidence of value to show, in opposition to this application, that the distribution was manifestly unfair to the point of unconscionability. He has failed to do so. “Although plaintiff retained property which was substantially more valuable, ‘courts will not set aside an agreement on the ground of unconscionability simply because it might have been improvident’ [citations omitted]” (Cantamessa v Cantamessa, 170 AD2d 792, 794). Defendant’s application for summary judgment dismissing the plaintiffs action for rescission is granted.
Having found the separation agreement valid, the court finds that defendant’s application for summary judgment dismissing plaintiffs action for divorce on the ground of abandonment must also be granted. (Belandres v Belandres, 58 AD2d 63.) *326 With respect to defendant’s application for summary judgment dismissing plaintiffs action for divorce on the ground of cruel and inhuman treatment, such motion is also granted; the grounds pleaded in plaintiffs complaint, if proven, fall far short of that standard which is required in a long-term marriage. When the marriage is one of long duration, a high degree of proof of cruel and inhuman treatment is required to maintain an action for divorce on the ground of cruel and inhuman treatment of the plaintiff. (Brady v Brady, 64 NY2d 339; Doyle v Doyle, 214 AD2d 918; Walczak v Walczak, 206 AD2d 900; Biegeleisen v Biegeleisen, 253 AD2d 474.)
Defendant’s motion for summary judgment granting her a “conversion” divorce pursuant to Domestic Relations Law § 170 (6) is granted. In order to prevail on such grounds, the defendant must establish that the parties entered into a valid separation agreement, and substantially complied with the terms thereof for a period of at least one year, which fact has not been disputed by plaintiff. Further, although defendant has failed to allege that the agreement was filed in the Office of the County Clerk prior to the commencement of the action, a review of the record and the pleadings filed herein clearly demonstrate that said agreement was so filed by the plaintiff on June 14, 2001, together with the summons and complaint. Said filing obviously precedes the filing of defendant’s counterclaim for divorce based upon Domestic Relations Law § 170 (6).