Anonymous v Anonymous (2004 NY Slip Op 50080(U))

[*1]

Anonymous v Anonymous

2004 NY Slip Op 50080(U)

Decided on February 9, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 9, 2004

Supreme Court, New York County
 Anonymous, Plaintiff,
against
Anonymous, Defendant. [FN1]
Index No. 121930-2002

CAROL EDMEAD, J.
This is an action for partition and declaratory judgment concerning a Soho Loft located on the fifth floor of 547 Broadway (the "Fifth Floor Loft"), which comprises two separate spaces (the "Broadway side" and the "Mercer Street side"). As relevant to the instant matter, plaintiff's second cause of action seeks a declaration that a certain property division agreement concerning the Fifth Floor Loft was valid when executed and that it continues to control the relative rights and interests of the parties according to its terms as operative after its termination.[FN2] Plaintiff now moves pursuant to CPLR 3212 for partial summary judgment enforcing the alleged agreement and dismissing the First, Second, Third, Tenth and Eleventh Affirmative Defenses and the First, Second, Fifth and Sixth Counterclaims.
In his affidavit in support, plaintiff states that when the subject building became available for sale as a cooperative in 1983, the parties jointly borrowed approximately $35,000.00 from Citibank on a note [FN3] they each signed in order to purchase shares to the Fifth Floor Loft.[FN4] Plaintiff contends that the purchase could not have been made but for their "partnership," to wit: his status as a certified artist, which was legally required for the purchase, and defendant's income as a tax attorney. An illness to plaintiff in 1983 caused plaintiff to stop full-time work. According to plaintiff, defendant collected the rental income from a Karate Studio occupying the Mercer Street side to pay the parties' joint expenses and the Citibank loan, and collected subsequent rental [*2]income from a second floor cooperative rental [FN5] to pay further joint expenses. Also, defendant prepared plaintiff's income tax returns throughout their relationship and reported half of the rental income from both sources on each of their returns.
In further support, plaintiff submits copies of a Shareholder's Certificate made out to plaintiff and defendant representing 17.90 shares relating to the Fifth Floor Loft.[FN6] Plaintiff also submits a copy of a sheet from a stock transfer record book, which indicates that the parties were named as "Joint tenants with right of Survivorship" for Certificate Nos. 51 (1.79 shares), 52 (14.32 shares) and 53 (1.79 shares) (totaling 17.90 shares). Plaintiff further states that defendant did not deny at his deposition that such shares were issued to the two of them jointly.
Plaintiff claims that to memorialize their economic relationship, the parties executed an agreement, dated November 23, 1983 (the "Agreement"), which was drafted by attorney, Arlene Boop, at their request. The Agreement states, in pertinent part:

. . . the parties have jointly contributed their time, energy, skills and financial resources toward the maintenance of a household; and . . . the parties have jointly purchased as tenants in common with the right of survivorship 17.90 shares of stock in 547 Broadway Realty Corp. . . . to which a lease for the 5th floor (hereinafter the loft) of 547 Broadway . . . is appurtenant;
. . .

. . .[defendant] has contributed the majority of the funds necessary for the parties household expenses and the above-stated purchase [of 17.90 shares related to the lease of the Fifth Floor Loft], and [plaintiff] has contributed the largest portion of his time and talents to the work [necessary] to renovate and maintain such loft to accommodate the parties residence; and
. . . the parties expect their relationship to continue; and

. . . the parties wish to acknowledge and express their understanding of the cooperative spirit and appreciation for the separate resources and skills of the other by which the parties have to this date and intend in the future to maintain their relationship and to express hereby their various rights and responsibilities with regard to each other as well as with regard to the stock of the Corporation.
IT IS THEREFORE, agreed as follows . . .
[*3]
4. All monies heretofore or in the future paid by either party toward the joint expenses of the parties and all services heretofore or in the future including legal work by [defendant]; and renovation, design and repair work by [plaintiff] on the loft - performed or rendered by one party for the other in connection with the parties ownership interest in the [cooperative] corporation . . . shall be deemed to be a gift to the other, and any ownership interest arising therefrom shall be deemed to be held as tenants in common with the rights of survivorship [sic].
5. It is hereby agreed that the parties shall execute mutual wills in which each shall bequeath to the other, providing he survives the decedent by at least ninety (90) days, all his interest and right in the 547 Broadway Realty Corp.
9. In the event of the termination of this agreement, the following provision shall apply:

b) The parties shall [seek] to sever their joint interest . . . in 547 Broadway Realty Inc., one-half to one party and one-half to the other party. . . .
The Agreement further provided that in the event each space was not of equal value, there would be an equitable financial adjustment.
When the parties later separated in 1997, defendant moved into the Mercer Street side of the floor, previously occupied by the Karate Studio. According to plaintiff, the building officers split the maintenance charges between the parties in equal parts. In 1998, defendant served a letter upon plaintiff terminating the Agreement. Four years later, defendant's attorney sent plaintiff a letter, dated September 4, 2002 (the "Settlement Letter"), demanding that plaintiff vacate the premises. The Settlement Letter claimed that the Agreement was a nullity due to, among other things, a conflict of interest which precluded Ms. Boop from representing both parties.
Plaintiff initially asserts that any ethical attack upon the Agreement on conflict of interest grounds is without merit, since there is no ethical restriction upon a lawyer turning an agreement of two parties into a legal contract at the request of both. Further, defendant, a then recent graduate of NYU Law School, "survivor" of the New York Bar Exam, and "Wall Street" attorney did not need to be given advice that he could have sought separate counsel.
Plaintiff further argues that the First and Second Affirmative Defenses (that the Agreement is vague and there was no meeting of the minds, respectively) lack merit. Plaintiff contends that despite the Agreement's reference to the parties' ownership interests as "tenants in common with the rights of survivorship," there is no confusion that the parties intended to create a tenancy-in-common and the right of survivorship to be realized through the mechanism of wills.
Plaintiff next argues that the Third Affirmative Defense (Fraud) alleging that plaintiff misrepresented that he would "continue to work and contribute financially to the best of his ability to the joint household expenses of plaintiff and defendant" so as to induce defendant to enter into the Agreement, lacks merit and is stale. Plaintiff contends that the Agreement expressly indicates that the parties' contributions had not been equal and that no one could [*4]predict their contributions in the future. In any event, plaintiff did contribute to the joint household expenses: plaintiff permitted defendant to bank plaintiff's share of the rental income to pay for expenses and plaintiff cooked, kept the home, and created art for it to the best of his ability. Plaintiff also argues that after plaintiff stopped full-time work in 1983, defendant did nothing from 1983 through 1997 to either terminate or restructure the Agreement.
Plaintiff next contends that the Tenth Affirmative Defense that such Agreement, if any, was terminated by defendant, would result in the parties evenly dividing their common effects, move to the separate sectors of the floor, and obtain separate proprietary leases.
It is also argued that the Eleventh Affirmative Defense, that plaintiff breached paragraph 7 of the Agreement, which precluded the parties from renting "any portion of the space occupied by the parties without the consent of the other," lacks merit. Plaintiff contends that plaintiff took in a roommate after defendant's departure, and thus at such time, the Broadway side was no longer "occupied by the parties." In any event, any breach by plaintiff would result in damages (as stated in defendant's Seventh Counterclaim).
Plaintiff further argues that although the Fourth and Fifth Affirmative Defenses (equitable estoppel and unclean hands, respectively) cannot be adequately challenged in the absence of discovery, such defenses should fail upon a finding that the Agreement was valid and enforceable.
Plaintiff also argues that the following counterclaims are without merit: (1) the First Counterclaim for use and occupancy as of 1983 is barred by the nature of the Share Certificates, Agreement, and Statute of Limitations; (2) the Second Counterclaim that defendant is owner of 50% of any "gift" he made to plaintiff in the form of unreimbursed contributions toward the purchase and maintenance of the Fifth Floor Loft, and use and occupancy since July 1998, lacks merit in light of the Agreement; (3) the Fifth Counterclaim for unpaid loans made to plaintiff lacks specificity and, to the extent it relates to monies given prior to defendant moving out, such claim is barred by the Statute of Limitations; and (4) the Sixth Counterclaim for money advanced to third parties on plaintiff's behalf to cover plaintiff's health insurance premiums, travel and vacation expenses, gym membership, and medical expenses also lacks specificity and is barred by the Statute of Limitations.
Defendant's Cross-Motion
In response, defendant opposes the portion of plaintiff's motion seeking to strike his First, Second, and Third Affirmative defenses, arguing that there was no valid agreement between the parties. Defendant further argues that plaintiff's challenges to the Tenth and Eleventh Affirmative defenses are premature in the absence of discovery, and that in the event the Agreement is valid, plaintiff breached it. Defendant further opposes plaintiff's motion to strike defendant's First, Second, Fifth, and Sixth counterclaims as premature. Defendant also cross moves for partial summary judgment declaring that the Agreement is not an enforceable contract, and dismissing plaintiff's Second Cause of Action for declaratory relief.
In his affidavit, defendant asserts that he bore substantially all of the expenses of renovating the Fifth Floor Loft, paid all of the costs of acquiring and repaying the loans for the Fifth Floor Loft, and paid virtually all of the costs of maintaining it for the last twenty years. According to defendant, plaintiff told him that once the renovations to the Fifth Floor Loft were complete, he would return to full-time employment, which plaintiff never did after 1983. [*5]Defendant expected plaintiff to earn a substantial salary as an artist, and make an equal contribution to the costs of acquiring and maintaining the Fifth Floor Loft. Defendant also denies that the parties were required to demonstrate that either of them was an "artist" in order to purchase the premises, and claims that several non-artists have always occupied the building. Defendant does not recall receiving any share certificates or proprietary lease for the Fifth Floor Loft, and points out that the copy of the certificate submitted by plaintiff is unsigned. Defendant also claims that he financed plaintiff's unsuccessful photography business and paid all expenses associated with the Fifth Floor Loft from 1983 through 1998. Defendant also denies that plaintiff received income from the cooperative from the second floor rental.
Defendant further argues that the Agreement was based on love and affection, and thus, lacks legally sufficient consideration. Defendant contends that the only consideration he received was the expectation that plaintiff would "love me and continue to engage in an intimate relationship with me." Defendant points out that plaintiff testified at his deposition that he did not give defendant anything in exchange for signing the Agreement, and that the love between the parties was part of the consideration for the Agreement. Defendant also contends that the promise to leave each other their respective interest in the Fifth Floor Loft by will was worthless, since the plaintiff's interest therein was a right of survivorship. Also, since their interest would pass to the survivor outside of the decedent's estate, and could not be transferred by will, the mutual will provision is illusory.
Defendant also argues that there was no meeting of the minds on essential terms of the parties' property sharing arrangement. To illustrate, defendant points out that plaintiff believed that he was entitled to a half-share interest in the Fifth Floor Loft despite his lack of any monetary contribution for its acquisition or maintenance, whereas defendant believed that plaintiff was required to contribute to the joint household expenses over the life of the Agreement. Further, the Agreement is silent as to an essential term, to wit: what financial contributions were required by plaintiff and defendant.
Defendant further contends that the Agreement is too vague, in that, inter alia, the term "tenants in common with rights of survivorship" is contradictory. The Agreement is further vague, since it makes no provision for the application of any remaining income from the rental of the fifth floor. Also, the provision that "[n]either party may rent any portion of the space occupied by the parties without the consent of the other" fails to specify what constituted "space occupied by the parties."
Further, defendant claims that the Agreement was drafted by an attorney with an irreconcilable conflict of interest, who failed to disclose her conflict to the parties or obtain a waiver. Defendant contends that he did not have any discussions with Arlene Boop or plaintiff regarding its terms or the conflict. That defendant attended law school does not diminish his right to independent counsel.
Defendant opposes the use of the Settlement Letter, arguing that it is inadmissible, adds nothing to plaintiff's argument, and was previously expunged from the record.
In reply, plaintiff adds that under General Obligation Law 5-1115, a promise by the grantor in a conveyance of an interest of real property shall not be denied effect due to the lack of consideration. Plaintiff also argues that there was sufficient consideration to support the Agreement: they both took out a loan and signed a note; plaintiff's photography equipment was [*6]listed as an asset available to the support the loan; plaintiff's income from the rental property was used to repay the loan and defray the maintenance costs; the parties promised to give each other the right of first refusal in the event that either should seek to sell his separated apartment; love and affection can support an executed contract; and consideration could be found in mutual promises to leave their interest in the space to the other in a will and to each take one of the units in the event they separated. In any event, in the absence of ample consideration, plaintiff detrimentally relied upon the promises of defendant, and defendant waited until four years after terminating the Agreement to allege unenforceability or overreaching.
 Plaintiff also adds that there was a meeting of the minds, given that they each understood that defendant was earning a good salary, plaintiff was struggling as a photographer, and they would pool their unequal resources as part of sharing their lives. Furthermore, plaintiff argues that the alleged conflict of interest is illusory since defendant cannot recall any discussions he had with Ms. Boop concerning the Agreement, and as a lawyer, defendant was aware of his entitlement to independent counsel.
Plaintiff further submits that he used the Settlement Letter in an effort to refute an anticipated argument of conflict of interest and to establish the defendant's first attempt to renounce the Agreement.
In reply and further support of his cross-motion, defendant contends, among other things, that the Agreement is not notarized or acknowledged, and thus, insufficient to convey to plaintiff any interest in any real estate defendant bought. Defendant also points out that the draft application submitted by plaintiff was unsigned, and does not represent the loan application he ultimately submitted to the bank, and therefore, cannot establish any consideration given by plaintiff for the Agreement. In any event, that the draft application states $2,000. worth of photographic equipment as an asset is immaterial in the absence of any indication as to who owned it. Further, since plaintiff's net worth was a negative number, he was of no help in getting the loan approved. Also, the parties' mutual promises are insufficient consideration to create a binding contract. Here, any promise to leave an interest in the Fifth Floor Loft to the other by will is illusory, since the Agreement gave the parties a joint tenancy with right of survivorship, in which case, such interest would pass to the survivor outside of the decedent's estate, and could not be transferred by will. Also, any promise to divide the Fifth Floor Loft equally upon the Agreement's termination does not apply where the Agreement is void ab initio. Defendant also argues that the statute and caselaw upon which plaintiff relies to refute defendant's arguments of lack of consideration are irrelevant. Defendant also adds that the Bar Exam did not have an Ethics component.
Defendant also adds that any claim by plaintiff of detrimental reliance is inapplicable where plaintiff failed to explain how he relied, or what detriment he suffered, and that plaintiff's enjoyment of living in a loft space at no cost does not constitute detrimental reliance within the meaning of the doctrine.
Defendant also argues that there was no meeting of the minds, since defendant never agreed to pool their income or property, or told plaintiff that he would give him half of his interest in the Fifth Floor Loft. Defendant intended to give plaintiff a right of survivorship if defendant predeceased him while they were living together, as further supported by the stock ledger exhibit. Defendant also contends that plaintiff abandoned his attack on defendant's [*7]counterclaims, and requests that the settlement letter be expunged.
Analysis
The sole issue before this Court at this juncture, based on this Court's prior Order dated February 23, 2003, is whether the Agreement between plaintiff and defendant is a valid and enforceable contract. The relevant inquiry, as shaped by the parties' submissions, thus becomes whether there was sufficient consideration to support the Agreement, for this remains the pertinent test even though the parties' contemplation of cohabitation may have been the reason for their entering into such an agreement at the outset. Provided there is sufficient consideration, the issue next becomes whether there was a meeting of the minds as to the essential terms. It bears noting that this Agreement does not constitute the instrument by which the cooperative shares to the Fifth Floor Loft were conveyed to the parties; the Agreement states that the parties "have" jointly purchased 17.90 shares of stock in 547 Broadway Realty Corp.
Consideration
Consideration is defined as some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other (Richman v Brookhaven Servicing Corp., 80 Misc 2d 563 [N Y Dist Ct 1975] citing Strobe v Netherland Co., 245 AD 573 [Surrogate Court, New York County 1930]; Re Gomez Trust, 270 AD 322 [4th Dept 1946]). It is not essential to the validity of a contract that the consideration be recited therein since it may be implied, or proved by parol evidence (Richman v Brookhaven Servicing Corp., 80 Misc 2d 563, supra). Mutual promises in each of which the promisor undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of which is void, are sufficient consideration for one another in a bilateral contract (Brown v Ingersoll, 226 NYS2d 479 [Supreme Court, New York County 1962] citing 1 Williston on Contracts, (3d ed.), § 103.) However, "love and affection," does not suffice as a predicate for enforcement of an executory agreement (see McRay v Citrin, 270 AD2d 191 [1st Dept 2000]).
 The Agreement herein clearly states that plaintiff would contribute his time and talent to the renovation of the parties' residence: "all services heretofore or in the future including . . . renovation, design and repair work by [plaintiff] on the loft." That the Agreement indicates that defendant has contributed the "majority" of the funds necessary for the parties' household expenses and purchase of the cooperative shares indicates that plaintiff quite possibly contributed a minority portion of funds for such expenses and costs, in addition to his time and talents noted above. "The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement . . . . It is competent for the parties to make whatever contracts they may please, so long as there is no fraud or deception or infringement of law (Mencher v Weiss, 306 NY 1 [1953], citing 17 C J S, Contracts, s 89). Here, the papers are devoid of any indication of fraud or deception.
Although declining to recognize a contract which is implied from the rendition and acceptance of services, the New York Court of Appeals stated in Morone v Morone (50 NY2d 481, 486 [1980]), that "while cohabitation without marriage does not give rise to the property and financial rights which normally attend the marital relation, neither does cohabitation disable the [*8]parties from making an agreement within the normal rules of contract law." This Court adopts the view that unmarried cohabitants may lawfully contract concerning their property, financial, and other matters relevant to their relationship, subject to the rules of contract law, except where sexual services constitute the only consideration for the agreement (see e.g. Wilcox v Trautz, 427 Mass 326, 693 NE2d 141 [1998] [unmarried cohabitants may contract concerning property and financial matters, "even if expressly made in contemplation of a common living arrangement, except to the extent that sexual services constitute the only, or dominant, consideration for the agreement, or that enforcement should be denied on some other public policy ground"]; Suggs v Norris, 88 NC App 539, 364 SE2d 159 [1988][adopting the rule that agreements regarding the finances and property of an unmarried but cohabiting couple, whether express or implied, are enforceable as long as sexual services or promises thereof do not provide the consideration for such agreements]; Small v Harper, 638 SW2d 24 [Tex. App. Houston 1st Dist. 1982] [plaintiff's affidavit attesting to an oral agreement to combine real property and devote talents and energies in the management of combined assets was sufficient to defeat defendant's motion for summary judgment]). To that end, this Court is unaware of any public policy which precludes an unmarried cohabitant from asserting a contract claim based on an express written agreement against the other party to the cohabitation where the claim exists independently of the sexual relationship and is supported by separate consideration.[FN7]
Contrary to defendant's contention, it cannot be said that the Agreement herein is based solely on love and affection (cf. Rose v Elias, 177 AD2d 415 [1st Dept 1991] [defendant's written promise to provide an apartment for plaintiff in return for the "love and affection" that she provided to him during the prior three years was unambiguous and complete, and it is apparent that the parties did not view plaintiff's alleged forbearance from accepting job opportunities as consideration for the promise]; Clement v Lavine, 50 AD2d 63 [4th Dept 1975] [the sole consideration for the transfer of property was the love and affection and care of the property]). The Court observes that paragraph 4 of the Agreement states that "renovation, design, and repair work by [plaintiff] on the loft" in the future would be deemed a gift to defendant in "connection with the parties ownership interest" in the Fifth Floor Loft. Valid consideration which will support a contract need not be equal on both sides, and if a minimal yielding of a position by one side promotes an agreement, then it will be deemed enforceable. There is no need to measure the relative weight of the consideration provided by each party (Silver v Starrett, 176 Misc 2d 511, 519 [Supreme Court, New York County 1998]). Thus, the value of the consideration is not a determination for the court when the Agreement is sought to be enforced. Suffice it to say, there is sufficient consideration to support the Agreement.
Meeting of the Minds
Defendant's contention that the Agreement is silent as to the respective obligations of the parties to make financial contributions toward the acquisition and upkeep of the Fifth Floor Loft is at odds with the express language of the Agreement. There is no indication in the Agreement [*9]that plaintiff's sole obligation was to contribute money to the parties' joint expenses. Indeed, plaintiff's lack of monetary contributions is of no moment for purposes of determining whether a valid agreement between the parties existed, since the parties clearly contemplated plaintiff's contribution as services, as well. While the Agreement refers to "[a]ll monies heretofore or in the future paid by either party toward the joint expenses," it further refers to "all services" by defendant and plaintiff, including renovation, design and repair work on the Fifth Floor Loft by plaintiff (emphasis added). The Agreement further states that the "parties have jointly purchased" the stock in 547 Broadway to which the Fifth Floor Loft is appurtenant. As such, defendant's argument that there was no meeting of the minds as to the parties' respective obligations is without merit, and his Second Affirmative defense is dismissed.
Nor can it be said that the Agreement is void for vagueness. An agreement is not rendered unenforceable merely because the parties differ in their subjective interpretation of the instrument. Construction of an agreement presents a question of law for the Court and, where it is otherwise "clear, unequivocal and understandable," the contract will be enforced without resort to extrinsic evidence (Non-Linear Trading Co., Inc. v Braddis Assoc., Inc., 243 AD2d 107 [1st Dept 1998]; Federal Deposit Ins. Corp. v Herald Square Fabrics Corp., 81 AD2d 168, 180 [2d Dept 1981][quoting Bethlehem Steel Co. v Turner Constr. Co., 2 NY2d 456, 460 [1957]).
The Agreement indicates that the parties intended to hold their interest in the Fifth Floor Loft as "tenants in common with rights of survivorship." As cited in Cortelyou v Dinger, 62 Misc 2d 1007 [Supreme Court, New York County 1970]), the law is set forth at 5A Warren's Weed New York Real Property, Tenancy in Common, section 7.04:

"A tenant in common, although owner of an undivided share only in the land, differs from a joint tenant in having a several and distinct estate therein. And, except for the fact that he has not the exclusive possession, he has the same rights in respect to his share as a tenant in severalty. Each tenant in common holds his title and interest independently of the other tenants in common. Thus, a tenant in common may transfer, devise, convey, lease, mortgage or otherwise incumber his interest in the land without seeking the consent or joinder of his co-tenants to the transaction. 'A tenant in common, therefore, can convey his interest to another person or persons, and, upon that conveyance one tenancy in common is terminated and a new one arises among the new tenants in common."
As set forth in 13 New York Jurisprudence, Cotenancy and Joint Ownership, s 3:

"Joint tenancy is an estate held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship or jus accrescendi. In order to establish a joint tenancy, four requisites must exist, namely: the interests of the tenants must be the same; the respective interests must accrue by one and the same conveyance; they must commence at one and the same time; and the property must be held by one and the same undivided possession or right to possession. In other words, there must be four unities: (1) unity of interest, (2) unity of title, (3) unity of time, and (4) unity of possession or seisin. If any one of these elements is lacking, the estate will not be one in joint tenancy."
It is not necessary that the words "joint tenancy" be used to create the estate (Giudici v [*10]Lofaso, 103 NYS2d 335 [Supreme Court, New York County 1951]).
Although paragraph 4 of the Agreement erroneously refers to the parties' interests as "tenants in common with rights of survivorship," the remaining terms of the Agreement dissolve any notion that each party intended to hold his title and interest independently of the other, an essential characteristic of a tenancy in common, unless either party terminated the Agreement. The parties do not dispute that their undivided interest in the Fifth Floor Loft was conveyed to them at the same time, with the same title, and that the possession by both was simultaneous with the conveyance. Further, paragraph 4, when read in conjunction with paragraph 5 (concerning their testamentary disposition of the Fifth Floor Loft), indicates an intent to hold the interest as joint tenants with rights of survivorship (see Tutunjian v Vetzigian, 64 NYS2d 140 [Supreme Court, New York County 1946] [stating that a person may make a valid agreement to make a particular testamentary disposition of his property, and that as a contract, if supported by an adequate consideration, it is enforceable in equity]). Also, any right of the party to transfer his interest in the Fifth Floor Loft could not be exercised until after "termination of this [A]greement and allocation of the front and rear portions of the space and the interest in the Corporation to the parties," and was furthermore subject to the other party's right of first refusal to purchase such space (paragraph 12 of the Agreement).
When viewed in its entirety, the Agreement clarifies the parties' rights with respect to the division of property acquired during their relationship in the event that they should separate (see Wilcox v Trautz, 427 Mass 326, supra). From the termination clauses, it appears that the parties provided for a means by which they would divide their joint interest in the Fifth Floor Loft in the event of what married couples would call a "divorce." Here, in the event either party terminated the Agreement, the parties, as agreed, would divide the premises into equal parts, in such manner that the portions the Fifth Floor Loft each party received would be of equal value. Thus, under the unique circumstances of this case, it is evident that the parties intended to retain equal rights to share in the enjoyment of the Fifth Floor Loft during their lives, with the right of survivorship, until either party terminated the Agreement (see Crawley v Shelby, 37 AD2d2d 673 [3d Dept 1971] [stating that the intent to create a tenancy other than a tenancy in common must be given effect if such intent can be gathered from the whole instrument and if consistent with the rule of laws]).
The Court considered defendant's remaining arguments concerning vagueness, and finds them to be of no merit.
Remaining Arguments
Additionally, defendant failed to establish, and the record is devoid of any evidence that would support defendant's argument that the Agreement is void due to Ms. Boop's alleged conflict of interest. The fact that the same attorney represented both parties in the preparation of the agreement does not require an automatic nullification of the agreement (Levine v Levine, 56 NY2d 42 [1982] [upholding a separation agreement], citing Perry v Perry, 64 AD2d 625 [2d Dept 1978] [upholding a separation agreement drafted by one attorney representing both parties where the attorney managed to preserve neutrality and that the agreement was arrived at fairly, without overreaching by either spouse]). Although the absence of independent counsel is a significant factor to be taken into consideration when determining whether an agreement was freely and fairly entered into, the fact that each party retained the same attorney does not, in and [*11]of itself, provide a basis for rescission (Levine v Levine, supra). Further, the record indicates that Ms. Boop did not represent either of the parties, but acted only as a scribe in preparing said agreement (see e.g. Dwyer v Dwyer, 190 Misc 2d 319 [Supreme Court, New York County 2001]). It bears noting that defendant testified essentially that he did not recall the circumstances surrounding the parties' meeting with Ms. Boop concerning the drafting of the Agreement, and that in 1983, he knew that "anybody who wanted to consult a lawyer was always free to do so" (Deposition of defendant at pages 38-39; 122-123).
As this Court finds that the Agreement was supported by sufficient consideration, and that defendant's challenges to the Agreement are without merit, the defendant's First and Second Affirmative defenses are dismissed.
Further, defendant's Third Affirmative defense (fraud) on the ground that plaintiff represented that he would work to the best of his ability and contribute financially to the joint household expenses is time-barred. The statute of limitations for commencing an action based in fraud is "six years from the date that the alleged fraud was committed, or two years from the date the fraud was discovered or, with the exercise of reasonable diligence, should have been discovered." (see CPLR 213; 203 [g]). Defendant claims that from 1981-1983 "plaintiff worked full-time and part-time in various jobs" and "collected a regular paycheck" (Affidavit by defendant in support of Cross-Motion, para. 12). According to defendant, "[s]ince November 1983 . . . plaintiff never sought or obtained full-time gainful employment" since plaintiff "procured the 1983" Agreement (Affidavit by defendant in support of Cross-Motion, para. 24; Reply Affidavit of defendant, para. 7). Thus, any alleged fraudulent misrepresentation should have been discovered with the exercise of reasonable diligence in 1983.[FN8] The Court notes that defendant does not refute plaintiff's claim that the Third Affirmative defense is time barred.
Defendant's contention that a determination as to whether his Tenth Affirmative defense should be dismissed is premature in the absence of discovery is contrary to the terms of the Agreement. Defendant's Tenth Affirmative defense alleges that to the extent the Agreement is valid, it was terminated, and thus, is "no longer of any force or effect." However, termination of the Agreement did not alter the remaining terms of the Agreement. The Agreement sets forth the respective rights of the parties "[i]n the event of the termination of [the] [A]greement," including the division of all joint personal household property and joint interest in the Fifth Floor Loft in equal shares. In light of the express language of the Agreement, there is no basis to find that the Agreement is without force or effect upon termination. Accordingly, defendant's Tenth Affirmative defense is dismissed.
As to defendant's Eleventh Affirmative defense, it is undisputed that defendant "moved [his] clothing and a few personal items to the western side of the Fifth Floor and stopped using the eastern side entirely" (emphasis added). Defendant argues that plaintiff breached the Agreement by renting a portion of the Fifth Floor without his consent. Since discovery in this matter has been limited to ascertaining whether the Agreement is valid and enforceable, any basis to dismiss defendant's Eleventh Affirmative defense on the grounds that plaintiff did not breach the Agreement is premature. As such, plaintiff's application to dismiss defendant's Eleventh [*12]Affirmative defense is denied at this juncture.
Plaintiff's application to dismiss defendant's First Counterclaim for use and occupancy is granted. There is no landlord-tenant relationship between the parties and no basis in law or fact to determine use and occupancy due and owing by plaintiff (see El Gallo Meat Market, Inc. v Gallo Market, Inc., 286 AD2d 255 [1st Dept 2001][a landlord-tenant relationship is the sine qua non for the remedy of use and occupancy]). The Court notes that defendant testified at his deposition that he believed that "[plaintiff] and I borrowed money" to purchase the 17.90 shares. Moreover, the Agreement states that "the parties have jointly purchased" the Fifth Floor Loft. Thus, in light of the Agreement, defendant cannot maintain an action for use and occupancy.
Plaintiff's application to dismiss defendant's Second Counterclaim is denied in part. Since the Agreement clearly specifies the manner in which personal joint property is to be divided between the parties, defendant's Second Counterclaim for the value of his interest in the gifted joint property cannot be dismissed at this juncture. However, to the degree Second Counterclaim seeks use and occupancy since July 1998, same is dismissed for the reasons set forth above.
Accordingly, it is hereby
ORDERED that the branch of plaintiff's motion for declaratory judgment that the Agreement is valid and enforceable is granted; and it is further
ORDERED that branch of plaintiff's motion to dismiss defendant's First Affirmative defense alleging that the Agreement is "too vague," Second Affirmative defense alleging that there was no meeting of the minds, Third Affirmative defense alleging fraudulent inducement, Tenth Affirmative defense alleging that the Agreement was terminated, is granted and said Affirmative Defenses are dismissed; and it is further
ORDERED that the branch of plaintiff's motion to dismiss defendant's Eleventh Affirmative defense is denied at this juncture; and it is further
ORDERED that the branch of plaintiff's motion to dismiss defendant's First Counterclaim is granted, and plaintiff's motion to dismiss defendant's Second Counterclaim is granted to the extent of dismissing the counterclaim therein for use and occupancy from July 1998; and it is further
ORDERED that plaintiff's motion to strike defendant's Fifth and Sixth Counterclaims is denied, without prejudice, and plaintiff's request that the Court direct defendant to plead such counterclaims with particularity is granted; defendant shall amend his Answer with respect to such counterclaims within 30 days of service of this order with notice of entry; and it is further
ORDERED that defendant's cross-motion for partial summary judgment declaring that the Agreement is not an enforceable contract, and dismissing plaintiff's Second Cause of Action for declaratory relief is denied; and it is further
ORDERED that the parties shall appear for a Status Conference for further discovery before Justice Carol R. Edmead, Part 35, Room 543, 60 Centre Street, New York, New York on March 16, 2004, 2:15 p.m.; and it is further
ORDERED that the plaintiff shall serve a copy of this order upon defendant with notice of entry within 20 days of entry.
This constitutes the amended decision and order of the Court.
[*13]
Justice Carol R. Edmead
Decision Date: February 09, 2004
Footnotes

Footnote 1: The decision has been modified for publication, including, but not limited to, omitting the identity of the parties to protect their privacy. 

Footnote 2: See page 3, infra.

Footnote 3: Defendant does not have a copy of the note, which, according to his deposition, was long ago retired.

Footnote 4: Plaintiff points out that defendant acknowledged at his deposition that the parties jointly borrowed money from Citibank in order to purchase the Fifth Floor Loft.

Footnote 5: According to plaintiff, the second floor of the subject building was not sold, but was occupied by a commercial tenant. Originally, the income from this space was used to offset the cooperative costs. However later, the income was distributed to the owners, including defendant.

Footnote 6: Plaintiff claims that the original share certificate issued to the parties has not been discovered, but in 2001, the attorney for the subject building mailed to plaintiff a copy of same. It should be noted that said certificate was unsigned by the cooperative board.

Footnote 7: In light of this Court's determination that the term "tenants in common with right of survivorship" in the Agreement does not render the Agreement void for vagueness (see discussion infra at 14-15), the Court does not determine whether the parties' promises regarding their wills are sufficient consideration to support the Agreement. 

Footnote 8: To the degree defendant intends to rely on the failure of plaintiff to resume work after his failed attempt at the photography business, the Third Affirmative defense is insufficiently pled.